KORRY L. ARDELL,

        Petitioner,

    v.                             Case No. 19-CV-_____

LANCE WIERSMA, Administrator.

        Respondent.

## MEMORANDUM IN SUPPORT OF
## PETITION FOR WRIT OF HABEAS CORPUS

Korry L. Ardell, petitioner in this action, by counsel, respectfully submits this memorandum in support of his concurrently-filed petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.[1]

## BACKGROUND AND
## STATEMENT OF FACTS

This is a federal habeas petition under 28 U.S.C. §2254 by a person in custody pursuant to a state court judgment of conviction.[2] The petition claims violation of Ardell's constitutional rights to due process and the effective assistance of counsel under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

This case addresses the intersection between one's First Amendment and statutory rights to seek and communicate information "regarding any subject," Wis. Stat. §940.32(4), and Wisconsin's stalking statute that seeks to protect individuals from fear-inducing conduct "directed at" them. Wis. Stat. §940.32(2). Specifically, this case addresses whether

---

[1]     Because the state court record has not yet been filed in this court, references to the state court appellate record will take the following form: (R__:__), with the "R__" reference denoting the state appeal record document number and the following ":__" reference denoting the page number of the document. References to the Attachments to Ardell's §2254 Petition will take the form: Attach.__.

[2]     Although Ardell was released from prison, he remains on extended supervision and thus remains "in custody" for purposes of §2254. *Jones v. Cunningham*, 371 U.S. 236, 240-43 (1963) (parole satisfies custody requirement).

and when Wisconsin's stalking statute constitutionally applies to communications directed not at the alleged victim, but at third parties. Here, those communications were emails providing information to and requesting information from someone who had previously worked with the alleged victim but had no ongoing relationship with her.

The focus on this issue is aided by the fact that even the prosecutor at trial chose not to dispute that the alleged victim's own uncorroborated assertions of more prototypical "stalking" behavior by Ardell (i.e., threatening calls, sitting outside her home, following her to work) were unworthy of belief after independent witnesses and documentary evidence disproved substantial portions of her claims and demonstrated that she had attempted to suborn perjury against Ardell. (*See* R95:57, 86). For completeness, however, Ardell will provide a full summary, including the complainant's allegations that even the trial prosecutor deemed unworthy of reliance.

### Procedural History and Relevant Trial Evidence

The evidence at trial established the following:

After a brief intimate relationship in 2007, Ardell and N.T. split up (R89:26; R92:43). N.T. subsequently made a number of allegations about Ardell. When Ardell learned that she had falsely accused him of burning down a home he owned, he sought information relevant to her credibility so he could protect himself from her allegations (R92:46-48; R93:23-24; R111:Exh.121). Ardell filed open records requests with the Division of Criminal Investigation and, because N.T. was a Milwaukee Public Schools teacher (R89:17), with M.P.S. (R89:18-22, 39-47; R92:51-57, 62-64; R100:Exhs.1-2, 4-7).

Ardell testified that he believed that he needed to show cause for the open records requests. He therefore included information that N.T. was involved in drug use and prostitution and that she had made false assertions. (R92:50, 52).[3] He also testified that he believed the requests would remain confidential and he did not think they would get back to N.T. (*id.*:49, 55). Only later did Ardell learn from M.P.S. and the attorney he hired to pursue the M.P.S. open records request that N.T. would be informed of the requests

---

[3]     Ardell corroborated the prostitution claim with an online chat showing N.T.'s offer to exchange sex with him for money (R92:43-46; R111:Exh.120).

(R92:54; *see id.*:58-62; R111:Exh.123).

At trial, N.T. claimed that the eight years she had known Ardell were "horror" (R89:35). She claimed that he sat in front of her house and followed her to work many times, although she chose not to report them at the time or to document more than a couple of the alleged dates (*id.*:33-35, 67-69, 71; *see also* R90:90).

N.T. claimed at trial that Ardell called and threatened her at home on May 23, 2013, the day the circuit court dismissed his open records case against M.P.S. (R89:23-26, 32-33, 58, 63-64). N.T. then claimed that she saw Ardell parked in front of her house the following morning and that he followed her to work around 7:30 a.m. (*id.*:63-64). Based on N.T.'s allegations, her school principal at the time, Michelle Hagen, advised her to seek a temporary restraining order, and she did so on May 24, 2013 (R89:32-35, 58, 60, 63-65).

However, while unknown to the T.R.O. Court (*see* R92:81-82), N.T.'s phone records showed that the blocked call she received on May 23 and claimed was from Ardell in fact was from the City Attorney representing M.P.S. (R91:42-53; R107:Exhs.110-112). Moreover, independent witnesses and supporting documents, also not part of the T.R.O. proceedings, confirmed that Ardell was in Wausau overnight on May 23-24, 2013, and then working in his dump truck rather than in front of N.T.'s home or following her to work in the Milwaukee area (R90:114-20; R91:10-26, 57-68; R103:Exh.105; R105:Exh.107; R107:Exh. 113; R111:Exhs.124-126, 128; *see also* R92:66-77).

N.T. also told police that Ardell had been in front of her home in a maroon van on or about July 30, 2014 (R90:89). However, independent witnesses and documentary evidence placed Ardell in Green Lake working with his dump truck throughout the period from July 28 through August 2, 2014 (R90:121-26; R91:27-40, 63-69; *see* R93:6-22; R104:Exh.106; R106:Exh.109; R110:Exh.119; R111:Exh.132-134; R112:Exh.135; R113:Exhs.136-137). Ardell also presented evidence and photographs showing that his maroon van had been parked in his driveway, inoperable since July 2013 (R90:49-53; R92:106-07; R95:7-10; R102:Exhs.101-104).

Roger Myszka, a former tenant in N.T.'s duplex, testified that N.T. asked that he tell the police that he saw Ardell in a maroon van outside the duplex, even though she knew that was false. Although he initially complied with N.T.'s request to lie about Ardell,

Myszka later rejected N.T.'s insistence that he stick with the false story. Instead, he called the District Attorney, admitting that N.T. had put him up to telling the lie. (R90:104-13).

Ardell sought assistance from law enforcement to investigate N.T.'s falsehoods against him and sought to investigate on his own when his requests were ignored (R92:79-81, 84-85; R111:Exh.129). In July 2014, after Hagen had left M.P.S. and was no longer N.T.'s supervisor (R90:11, 18-19), Ardell sent her a series of emails at her new school in Fond du Lac, requesting information regarding the decision to seek the T.R.O. and reflecting his position that the evidence used to seek that T.R.O. was false (*id*.:11-17, 20-24; R92:85-91; R100:Exhs. 9-13).

Although Ardell testified that he did not want N.T. to know of his investigation and did not intend that the emails be forwarded to her (R92:11, 93; R93:44),[4] Hagen contacted N.T. at some point and spoke with her about them (R90:16). However, Hagen did not testify regarding the substance of those conversations (*see id*.) and N.T. did not testify regarding the emails or their impact at all (*see* R88:17-78).

Over defense objection that she was neither the alleged victim nor N.T.'s employer or coworker at the time, Hagen was allowed to testify that Ardell's threat of a lawsuit against Hagen or publicity about her concerned her (R90:15, 27).

At some point, Ardell also learned that N.T. had made allegations against Daniel Fischer. Ardell made several calls to Fischer's number in an unsuccessful attempt to speak with him and learn whether she had made similar false allegations against him. Most calls went unanswered, although Ardell once was able to leave a voicemail and once a message with a relative. (R90:72-75; R92:96-97; R93:64-65; R101:Exh.16; R114:Exh.17).

Although Ardell did not know it at the time (R92:95; R93:64), Fischer was the father of N.T.'s child (R88:28-29), but no evidence was presented that the two were married or maintained any current relationship. Likewise, no evidence suggested that Fischer or anyone informed N.T. of Ardell's attempts to contact Fischer. Fischer did not testify.

The state also presented evidence that, in frustration over the failure of law

---

[4]    Indeed, Ardell testified that he intentionally avoided contacting relatives of N.T. who he knew might contact her (R93:46).

enforcement to investigate his claims that N.T. had falsely accused him, Ardell had left a voicemail message for an assistant district attorney, ADA Westphal, asking how he could get arrested in the hopes that would trigger such an investigation (R90:82-83; R114:Exh.18). Again, no evidence suggested that anyone informed N.T. of Ardell's voicemail.

In closing arguments, the state effectively ignored N.T.'s own allegations of stalking behavior (R95:57, 86) and likewise admitted that the open records requests alone would not support conviction (*id.*:56). Instead, it focused entirely on the Hagen emails and the attempt to contact Fischer as sufficient for conviction because they sought information about N.T. (*id.*:54-59, 84-87).

On November 5, 2015, the jury convicted Ardell of one count of stalking N.T. in violation of Wis. Stat. §940.32(2) (R96:8).

The circuit court denied Ardell's written Motion to Set Aside Jury Verdict, while noting he "might have appellate issues" (R97:2-6; *see* R45), and sentenced Ardell to two years initial confinement, three years extended supervision, and a fine of $7,500 (R97:44-45).

By post-conviction motion filed as part of his direct appeal, Ardell raised the same challenges raised here, among others (R54). Following briefing (R59; R64), the circuit court summarily adopted portions of the state's opposition memorandum and denied the motion without a hearing (R65; Attach. 5).

On March 6, 2018, the Wisconsin Court of Appeals affirmed (Attach. 2). As relevant here, that court rejected the plain meaning interpretations of every other court addressing equivalent language and overlooked both Wisconsin statutory provisions contrary to its holding and the First Amendment implications of its interpretation. Instead, that court deemed the stalking statute's requirement that conduct be "directed at" the alleged victim satisfied by comments seeking or relaying information about the alleged victim to third parties, regardless of whether the defendant intended the comments to be passed on to the alleged victim or used to harass her. (*Id.* at 2, 12-15, 18-19). The court then overlooked some of Ardell's claims and grouped other jury instruction challenges as ineffectiveness claims and denied them based on the absence of previous Wisconsin court decisions directly supporting Ardell's challenges (*Id.* at 18-20). On March 22, 2018, that court summarily denied Ardell's timely filed motion for reconsideration (Attach. 3).

On July 10, 2018, the Wisconsin Supreme Court denied Ardell's timely filed petition for review (Attach. 4).

Ardell timely files his habeas petition pursuant to 28 U.S.C. §2254 concurrently with this Supporting Memorandum.

## STANDARD OF REVIEW

A prejudicial constitutional violation generally is not alone sufficient for habeas relief. As amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104, 110 Stat. 1214 ("AEDPA"), 28 U.S.C. §2254(d) provides that a habeas application "shall not be granted" with respect to a claim the state courts adjudicated on the merits

unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The Seventh Circuit has explained those legal standards as follows:

> "[A] state court decision is 'contrary to' federal law if the state court either incorrectly laid out governing Supreme Court precedent, or, having identified the correct rule of law, decided a case differently than a materially factually indistinguishable Supreme Court case." *Conner v. McBride,* 375 F.3d 643, 649 (7th Cir.2004), *cert. denied,* --- U.S. ----, 125 S.Ct. 1399, 161 L.Ed.2d 193 (2005). "An 'unreasonable application' of Supreme Court precedent occurs when 'the state court identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case' or 'if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Dixon v. Snyder,* 266 F.3d 693, 700 (7th Cir.2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Clearly established" Supreme Court precedent is "the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

*Muth v. Frank,* 412 F.3d 808, 813-14 (7th Cir. 2005) .

That Court has construed this provision as requiring *de novo* review only of purely legal questions to determine if the state court applied the correct Supreme Court standards

and "reasonableness" review regarding application of that precedent to the particular facts of the case:

> Under these new standards, our review of state courts' legal determinations continues to be *de novo.* So, too, does our review of mixed questions of law and fact. [Citations omitted]. Under the AEDPA, however, we must answer the more subtle question of whether the state court "unreasonably" applied clearly established federal law as the Supreme Court has determined it. *Pitsonbarger v. Gramley,* 103 F.3d 1293, 1297-98 (7ᵗʰ Cir. 1996).

*Hall v. Washington,* 106 F.3d 742, 748 (7ᵗʰ Cir. 1997). The *Hall* Court went on to hold, however, that the reasonableness standard is not a toothless one:

> The statutory "unreasonableness" standard allows the state court's conclusion to stand if it is one of several equally plausible outcomes. On the other hand, Congress would not have used the word "unreasonable" if it really meant that federal courts were to defer in all cases to the state court's decision. Some decisions will be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary, that a writ must issue.

*Id.* at 748-49. "Unreasonableness is judged by an objective standard." *Morgan v. Krenke,* 232 F.3d 562, 565 (7ᵗʰ Cir. 2000).

Under 28 U.S.C. §2254(d)(2), a federal court also may grant habeas relief to one in custody in violation of the Constitution when the state court's decision rests upon factual determinations that are objectively unreasonable in light of the evidence presented in the state court proceedings. *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003). "A state court decision that rests upon a determination of fact that lies against the clear weight of the evidence is, by definition, a decision 'so inadequately supported by the record' as to be arbitrary and therefore objectively unreasonable." *Ward v. Sternes,* 334 F.3d 696, 704 (7ᵗʰ Cir. 2003) (citations omitted). The Court also may find a state court factual determination unreasonable where the state court failed to consider key aspects of the record. *Miller-El,* 537 U.S. at 346-47.

AEDPA deference is limited to the "last reasoned opinion on the claim." *Woolley v. Rednour,* 702 F.3d 411, 421 (7ᵗʰ Cir. 2012) (quoting *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991)). "Unless a state-court opinion adopts or incorporates the reasoning of a prior opinion, 'AEDPA generally requires federal courts to review one state decision.'" *Id.* (citation omitted); *see Thomas v. Clements,* 789 F.3d 760, 766 (7ᵗʰ Cir.), *rehearing denied,* 797

F.3d 445 (2015), *cert. denied*, 136 S.Ct. 1454 (2016).

The Supreme Court also has made clear, moreover, that deference to state court decisions is limited to that expressly provided under §2254(d). Thus,

> [w]hen a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in §2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires. [Citations omitted].

*Panetti v. Quarterman*, 551 U.S. 930, 953-54 (2007).

Finally, the restrictive provisions of the AEDPA apply *only* to matters actually decided on the merits by the relevant state court; matters not decided on the merits are reviewed *de novo*. *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (*de novo* review where state courts did not reach prejudice prong under *Strickland v. Washington*, 466 U.S. 668 (1984)); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)(same); *Thomas*, 789 F.3d at 766-67. "If the state court did not reach the merits, §2254 does not apply and this court applies the general habeas standard set forth at 28 U.S.C. §2243." *Muth*, 412 F.3d at 814 (citation omitted).

## SUMMARY OF ARGUMENT

Korry Ardell stands convicted in Wisconsin state court and sentenced for emails to a third party, seeking and providing information about the alleged victim. These are actions protected by the First Amendment that private investigators, litigation attorneys, and even police officers take every day and that the statute he was convicted of violating specifically provides it "does not apply to." Wis. Stat. §940.32(4).[5]

The Wisconsin Court of Appeals, in the "last reasoned opinion" on Ardell's claims, *Woolley, supra*, nonetheless upheld Ardell's conviction for stalking in violation of Wis. Stat. §940.32(2). Dissatisfied with the plain meaning of the statutory language requiring that the defendant "intentionally engage[d] in a course of conduct directed at" the alleged victim and not merely at a third party, Wis. Stat. §940.32(2)(a), that court judicially amended the statute to delete that constitutionally mandated scienter requirement. That court ignored

---

[5] As noted previously, although the state presented evidence of other conduct allegedly committed by Ardell (including allegations by the alleged victim herself that were rebutted by her own phone records, multiple independent witnesses, and the fact that she had solicited perjury from a prior tenant), it abandoned reliance on those claims at trial, focusing instead solely on Ardell's emails to Ms. Hagen. (*See* R95:57, 86).

that plain meaning, the plain meaning interpretations of that relevant language by every court found by either party to have interpreted it, and the statutory directive that it "does not apply to . . . obtaining or communicating information regarding any subject . . .," Wis. Stat. §940.32(4). The court also overlooked the First Amendment implications of its actions. Instead, the court unexpectedly and irrationally held a stalking charge may be based on the defendant's communications with third parties *about* the alleged victim without regard to whether the defendant intended the substance of those communications to be relayed to the alleged victim or used to harass him or her. (Attach. 2 at 10-15).

The state court's indefensible and unforeseeable interpretation of the statute's plain language denied Ardell his constitutional rights to notice and to a jury verdict beyond a reasonable doubt on all facts necessary for conviction. Section I & I,B,2, *infra*.

While the state courts are final arbiters of the meaning of their own criminal statutes, *Douglas v. City of Jeannette (Pennsylvania)*, 319 U.S. 157, 163 (1943), and alleged violations of purely state law are not cognizable on federal habeas, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), the state court's interpretation of the stalking statute violated Ardell's constitutional rights, denied him a jury verdict on facts constitutionally required for conviction, and entitles him to habeas relief vacating his conviction on at least two grounds. First, conviction based on the retroactive application of an unjustified and unforeseeable judicial amendment of a state criminal statute violates the constitutional right to notice. *E.g., Bouie v. City of Columbia*, 378 U.S. 347, 354, 355 (1964). Section I,B,1, *infra*. Second, absent circumstances not present here, criminalizing the act of seeking or communicating information based on the content of that communication violates the core values of the First Amendment. Sections I,B,2,b,ii & II, *infra*.

Because AEDPA deference only applies to issues decided on the merits by the state court, *Rompilla*, 545 U.S. at 390, review of these issues is *de novo*. The state court did not address or decide whether its unforeseeable expansion of Wisconsin's stalking statute violated Ardell's due process or free speech rights, ignoring the former claim and deeming the latter procedurally defaulted due to trial counsel's failure to raise the issue at trial (Attach. 2 at 18). Because that court's suggestion that trial counsel somehow forfeited Ardell's first amendment claim does not follow "firmly established and regularly followed

state practice," it does not bar relief here. *E.g.*, Section I,C, *infra*.

Ardell also is entitled to federal habeas relief because he was denied a jury verdict beyond a reasonable doubt on two additional facts necessary for conviction. Specifically, the instructions failed to require proof beyond a reasonable doubt of the additional statutory requirements that Ardell:

- acted with the subjective intent or purpose to cause a reasonable person serious emotional distress or fear of bodily harm, Wis. Stat. §940.32(2)(a); and

- "know[] or should know that at least one of the acts that constitute the course of conduct *will* [rather than merely 'could'] cause" the alleged victim serious emotion distress or reasonable fear of bodily injury, Wis. Stat. 940.32(2)(b).

*See* Section I,B,3, *infra*. No AEDPA deference applies because the state court overlooked these claims and therefore did not decide them on their merits. *Rompilla*, 545 U.S. at 390.

Finally, Ardell was denied the effective assistance of counsel to the extent this Court believes that Attorney Eippert forfeited any of those claims by failing to make a proper objection. Although likely moot since Ardell did not forfeit any of his substantive claims, each of the claims raised here would have been obvious to an attorney in Eippert's position and necessarily would have supported the defense at trial.

To the extent that the state appellate court actually decided Ardell's ineffectiveness claim, it applied a legal standard for deficient performance more restrictive than, and thus contrary to, the case-by-case reasonableness analysis mandated by *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, that court applied an impermissible and unreasonable *per se* standard, holding that counsel's unreasonable failure to raise an objection nonetheless cannot constitute deficient performance absent published authority supporting that objection (Attach. 2 at 18-19). AEDPA deference accordingly does not apply. 28 U.S.C. §2254(d)(1).

The state did not seriously argue below that the identified constitutional violations were harmless, and the Court of Appeals made no such finding. Accordingly, this Court can give the state courts no deference on that point beyond that required by *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (stating standard for harmless error on habeas review). Given that Ardell's defense to the third party communications allegations rested on his

testimony that he did not intend his requests to be relayed to the alleged victim, and given that his actions in fact are protected by the First Amendment, the violations here cannot rationally be dismissed as harmless.

## ARGUMENT

I.    **THE INSTRUCTIONS FAILED TO REQUIRE PROOF BEYOND A REASONABLE DOUBT OF ALL FACTS NECESSARY FOR CONVICTION, AND THAT ERROR JUSTIFIES HABEAS RELIEF**

Absent proper instructions, a lay jury cannot be expected to understand technical legal principles or what findings it must make to justify a conviction. The jury was unable to reach a constitutionally valid verdict because the instructions did not require it to find all facts necessary for conviction beyond a reasonable doubt. Specifically, the instructions did not require the jury to find, beyond a reasonable doubt or otherwise:

1.    That Ardell's communications with third parties must have been "directed at" N.T., i.e., that he either intended the substance of those communications to be relayed to her or used to harass her, and not merely be about her, Wis. Stat. §940.32(2)(a);

2.    That Ardell's course of conduct was pursued with the subjective intent or purpose that his actions would cause a reasonable person serious emotional distress or fear of bodily injury, *id.*; and

3.    That Ardell knew or should have known that at least one of the acts constituting the course of conduct *would* [rather than merely 'could',] place [N.T.] in reasonable fear of bodily injury, Wis. Stat. §940.32(2)(b).[6]

In a decision that was at best unforeseeable and indefensible by extant authority at the time, the state court chose to write the first statutory requirement out of the stalking statute and to apply that novel interpretation retroactively to Ardell in violation of his due process right to notice. (Attach. 2 at 10-15). *E.g., Marks v. United States*, 430 U.S. 188 (1977); *Bouie v. City of Columbia*, 378 U.S. 347 (1964). The state court neither addressed nor decided Ardell's due process/notice claim, nor did it address or decide the second and third

---

[6]    The substantive jury instructions on the stalking charge are found at R95:43-46.

requirements identified by Ardell (*see* Attach. 2).  AEDPA deference accordingly does not apply and the constitutional issues are reviewed *de novo*.  *E.g.*, *Rompilla*, 545 U.S. at 390.

**A.     The Right to a Jury Verdict Beyond a Reasonable Doubt of All Facts Necessary for Conviction**

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The Sixth Amendment, as enforced through the Fourteenth, generally mandates that the jury, rather than the judge, make that determination.  *E.g.*, *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993); *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000).

Accordingly, instructions which relieve the state of its burden of proving all facts or elements necessary for conviction beyond a reasonable doubt violate due process.  *E.g.*, *California v. Roy*, 519 U.S. 2 (1996) (per curiam) (instruction which omitted necessary element violated due process); *Carella v. California*, 491 U.S. 263, 265-66 (1989) (jury instructions relieving state of burden of proving every element of charged offense beyond reasonable doubt violate due process).

**B.     The Relevant Facts Necessary for Conviction**

**1.     The relevant requirements for conviction under Wis. Stat. §940.32(2)**

As relevant here, Wis. Stat. §940.32(2) requires proof of the following for a stalking conviction:

> (a) The actor *intentionally engages in a course of conduct directed at a specific person* that would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household.

> (b) The actor knows or should know that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional distress or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household.

> (c) The actor's acts cause the specific person to suffer serious emotional distress or induce fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.

(Emphasis added).

Under Wis. Stat. §940.32(1)(a)7, the following may be considered as part of the required "course of conduct directed at" the victim:

> 7. Sending material by any means to the victim or, for the purpose of obtaining information about, disseminating information about, or communicating with the victim, to a member of the victim's family or household or an employer, coworker, or friend of the victim.

While §940.32(1)7 refers to communications with certain third parties "for the purpose of obtaining information about [or] disseminating information about [the alleged victim,]" Wis. Stat. §940.32(4) clarifies that the stalking statute "does not apply" to, *inter alia*, "[g]iving publicity to and obtaining or communicating information regarding *any subject*. . .." Wis. Stat. §940.32(4)(a)1 (emphasis added).

**2.    Failure properly to instruct on the "directed at" requirement**

Having effectively and justifiably conceded that N.T.'s own allegations were not credible (R95:57, 86), the state instead focused its case on the theory that Ardell's communications with third parties, and specifically Michelle Hagen, were sufficient to constitute stalking in violation of Wis. Stat. §940.32(2) (*Id.*:54-59, 84-87).[7]

However, at the time of Ardell's emails, the Wisconsin courts had yet to address the interaction of communications with third parties and the statutory requirement that the defendant "intentionally engage[d] in a course of conduct directed at a specific person . . .." He had only the plain meaning of that and related statutory language, the uniform interpretation of that language by other courts, and the Supreme Court's interpretation of the First Amendment on which to rely in assessing what he was allowed to do. As shown below, none suggested that he could be prosecuted for emails with a third party seeking or communicating information about an alleged victim absent an intent that the substance of those third party emails either be relayed to the alleged victim or used to harass her.

In approving the state's theory and upholding Ardell's conviction, the state court

---

[7]    The state also presented evidence regarding Ardell's communications or attempted communications with Daniel Fischer, ADA Westphal, and the M.P.S. However, there was no evidence that N.T. was ever told of the communications with Fischer and Westphal, so those communications could not have caused her fear as required by Wis. Stat. §940.32(2)(c), and neither was a family member or coworker of N.T. as required by Wis. Stat. §940.32(1)(a)7. Finally, even the state admitted that the open records requests to M.P.S. were not illegal (R95:56).

of appeals relied on an unforeseeable interpretation of the "intentionally engage[d] in a course of conduct directed at a specific person" language in Section 940.32(2) that conflicted with the statutory language (ignoring or effectively writing certain language out of the statute), with every other known appellate decision that has construed the plain meaning of such language, with the statutory structure, and with the requirements of Wis. Stat. §§939.23(3) & 940.32(4) and the First Amendment. The court then applied that unforeseeable and indefensible interpretation retroactively to Ardell.

Ardell is entitled to be judged based on the law as it existed at the time of his actions, not based on a subsequent and unforeseeable expansion of the law. Again, while state courts have final say on the meaning of their criminal statutes, *e.g., Douglas v. City of Jeannette*, 319 U.S. at 163, the retroactive application of a judicial interpretation that is unforeseeable and indefensible based on existing authority violates the constitutional right to notice. *E.g., Bouie*, 378 U.S. at 354, 355. Accordingly, while a state courts' novel or even irrational interpretation may provide notice for purposes of *future* conduct, due process prevents the novel interpretation of §940.32(2) from applying to Ardell's past conduct.[8]

Because the instructions reflected a new and unforeseeable interpretation of the law rather than the law as it existed at the time of Ardell's emails, they did not require proof beyond a reasonable doubt of all facts necessary for his conviction. Because the state court neither acknowledged nor decided Ardell's due process notice claim, no AEDPA deference is appropriate. *Rompilla*, 545 U.S. at 390.

### a.    Applicable law – Due Process

"[T]he 'first essential of due process of law' [is] that statutes must give people 'of common intelligence' fair notice of what the law demands of them." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019), quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *e.g., City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). That due process requirement is violated where, as here, the defendant is entangled by an unforeseeable judicial enlargement of the scope of a criminal statute. *E.g., Marks v. United*

---

[8]    Because it violates the First Amendment, however, that Constitutional provision *would* prevent future applications of the state court's interpretation. Sections I,B,2,b,ii & II, *infra*.

*States*, 430 U.S. 188 (1977).

In *Bouie v. City of Columbia*, 378 U.S. 347 (1964), for instance, the Court reversed a trespass conviction. The state statute there applied only to "entry upon the lands of another . . . after notice . . . prohibiting such entry." The state court, however, interpreted the statute to apply as well to the defendants' actions in remaining at a drug store lunch counter after being told to leave, even though they entered the drug store legally and with permission.

This, the Supreme Court held, violated the due process right to fair notice.

> If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect.

378 U.S. at 352 (citation omitted). Retroactive application of the state's construction of its statute violated this due process standard because it was so clearly at odds with the statute's plain language and was unsupported by prior decisions. *Id.* at 355-63.

*See also United States v. Lanier*, 520 U.S. 259, 266 (1997) ("[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope"); *Marks, supra* (due process precludes retroactive application of standards defining unprotected obscenity in *Miller v. California*, 413 U.S. 15 (1973), to the extent those standards may impose criminal liability for conduct not punishable under the previously controlling test); *Douglas v. Buder*, 412 U.S. 430, 432 (1973) (per curiam) (trial court's construction of the term "arrest" as including a traffic citation, and application of that construction to defendant to revoke his probation, was unforeseeable and thus violated due process); *Rabe v. Washington*, 405 U.S. 313, 316 (1972) (per curiam) (reversing conviction under state obscenity law because it did "not giv[e] fair notice" that the location of the allegedly obscene exhibition was a vital element of the offense). *Compare Rogers v. Tennessee*, 532 U.S. 451 (2001) (retroactive abolition of common law "year and a day" rule was predictable and thus deemed not to violate fair warning under circumstances presented).

> **b.** **The state court's interpretation of Wis. Stat. §940.32(2) was neither foreseeable given the statute's language and First Amendment standards nor defensible under prior authority**

A state court's interpretation of a state statute generally is not subject to federal habeas review. *Estelle*, *supra*. However, because the due process issue here turns on whether the state court interpretation of §940.32(2) was "an unforeseeable and retroactive judicial expansion" of the statutory language, review of that language and the state court's rationale is necessary to consideration of the due process claim. *See, e.g.*, *Bouie*, 378 U.S. at 355-63 (Court reviewed at length the validity of the state court's construction of the state criminal statute, in terms of both the statute's language and prior authority interpreting that statute).

Here, as in *Bouie* and the other decisions noted *supra*, due process bars retroactive application to Ardell of an interpretation of §940.32 that effectively reads the "intentionally . . . directed at a specific person" requirement and §940.32(4) out of the statute by permitting communications with third parties about the alleged victim to be considered a part of the required "course of conduct" absent proof that the defendant intended the communications to be relayed to the alleged victim or used to harass her. Such an interpretation was wholly unforeseeable given the plain meaning of the statutory language, the uniform interpretation of that language elsewhere, the purpose of the statute, the express provision of §940.32(4) that actions such as Ardell's are *not* covered by the statute, and the Constitutional limitations on content-based restrictions on pure speech.

### i. The state court's interpretation

The state court of appeals held that, for the defendant's contacts with third parties to be considered part of the "course of conduct directed at" the alleged victim, it is not necessary that the defendant intended that the substance of those third party communications be relayed to or used to harass the alleged victim. (Attach. 2 at 10-15, 19-20). Indeed, that court interpreted the statute as requiring no actual or intended contact with the alleged victim at all. Instead, the court noted that the phrase "directed at" was not defined in the statute and turned to a dictionary and substituted "to engage in or launch hostilely" or to "focus on" for the statutory language (*id.* at 12-13 (citation omitted)). Positing that communications with a third party can be "launch[ed] hostilely" or "focus" on the alleged victim without regard to the defendant's intended or actual contact with him or her, the court concluded that proof of that intended or actual contact was not required.

*Id.* at 12-15, 18-19.

> ii. **The state court's interpretation was neither foreseeable nor defensible based on the statutory language or authority at the time**

For several reasons, the state court's deletion of the statutory requirement of subjective intent on the part of the defendant was neither foreseeable nor defensible based on the plain language of the statute nor authority at the time.

**The statutory language.–** The language of the statute expressly requires both that the course of conduct be "directed at" the alleged victim and that the defendant intend that result. Like the broader formulation, "directed toward," the plain meaning of "directed at" as used in §940.32(2) is that the conduct must be targeted or aimed at the alleged victim, and not at a third party. *See generally* **Leonard v. State**, 2015 WI App 57, ¶¶26-31, 364 Wis.2d 491, 868 N.W.2d 186 (Defendant's act of kicking of a door in his wife's presence not necessarily "directed at" his wife "in the sense that it was part of a course of conduct directed at frightening and intimidating her.").

The statutory definition of "course of conduct" bears this out. Wis. Stat. §940.32(1)(a) defines "course of conduct" in terms of specific actions, all of which directly or indirectly involve actual or intended contacts with or communications to the alleged victim. Given the reason for the statute, that makes sense; although overlooked by the state court, actions or communications that are not relayed to or used to harass the alleged victim cannot cause the actual emotional distress or fear required for conviction under Wis. Stat. §940.32(2)(c).

The plain meaning of the statute similarly must take into account the statutory requirement that "the actor intentionally engage[d] in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury" etc. Wis. Stat. §940.32(2)(a). Of course, communications with third parties cannot cause such distress or fear unless the "reasonable person" is aware of them or impacted because of them.

The state court disregarded the impact of this latter intent element, claiming that Ardell's argument "conflates the requirement that he 'intentionally engaged in a course of conduct' with the requirement that the course of conduct be 'directed at' N. The

requirements are distinct." (Attach. 2 at 14-15).

That assertion is unforeseeable and indefensible, and indeed quite extraordinary given controlling law. Although overlooked by the state court, Wis. Stat. §939.23(3) defines "intentionally" as meaning exactly what Ardell claimed it meant:

> that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result.

Because the requirements that the course of conduct be "directed at" the alleged victim" and cause fear in a reasonable person follow the term "intentionally" and are part of the "result specified," the plain language of §940.32(2) thus required that Ardell had the subjective intent to both direct his actions at the alleged victim and cause such fear or knew his emails to Hagen were practically certain to result. *See* Wis. Stat. §939.23(3):

> In addition, . . . the actor must have knowledge of those facts which are necessary to make his or her conduct criminal and which are set forth after the word "intentionally."

Moreover, context is critical. The statute addresses only *conduct* intentionally directed at the alleged victim, not mere attention, thoughts, emotions, and the like. Accordingly, while it may be said that focusing one's thoughts or attention on someone is the same as "directing one's thoughts" on them in the manner suggested by the state court, that plainly is not what the legislature had in mind. Under the state court's novel interpretation, any conduct "focusing on" or "launched hostilely against" the alleged victim – such as looking up newspaper articles or conducting legal research or a Google search – could be criminalized as "stalking." Statutes in Wisconsin must be construed to avoid such absurd results. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.

**The legislative history.–** The legislative history reinforces the plain language of the statute that it only applies to actions "directed at" the alleged victim, not to tangential actions involving third parties that are not intended to be communicated to or impact the alleged victim. Wisconsin's stalking statute originally was based on the National Institute of Justice's 1993 Project to Develop a Model Anti-Stalking Code for the States. *State v. Warbelton*, 2009 WI 6, ¶35, 315 Wis.2d 253, 759 N.W.2d 557. As noted by the state court, the purpose of the law is to "protect[] victims from 'obsessive, unpredictable, and violent'

acts," (Attach. 2 at 17, *quoting Warbelton* 2009 WI 6, ¶¶35-37). However, merely requesting information from or providing it to third parties cannot remotely have that effect absent an intent that they harass or relay the message to the alleged victim.

**Uniform Interpretation by Other Courts.–** Like §940.32(2), the Model Code required that the defendant, *inter alia*, "engage[d] in a course of conduct directed at a specific person . . .."). Model Anti-Stalking Code for the States, §2(a) Available at https://www.ncjrs.gov/pdffiles1/Digitization/144477NCJRS.pdf

Not surprisingly, therefore, many other states' stalking or harassment statutes employ similar language. The decisions from those states uniformly require that the defendant's actions target the alleged victim to be included within the plain meaning of the prohibited "course of conduct directed at a specific person." Actions merely intended to obtain information about the alleged victim from or to provide such information to third parties do not qualify absent proof that the defendant either intended such requests or information to be passed on to the alleged victim or intended the third party to harass the alleged victim based on the information.

That uniformity of interpretation confirms the unforeseeability of the Wisconsin court's interpretation below. For instance, in *Chan v. Ellis*, 770 S.E.2d 851 (Ga. 2015), the Georgia Supreme Court reversed a permanent injunction against a website owner who had posted disparaging claims about a poet, on the grounds that the posts were not "directed at" or "directed to" the poet: "That a communication is about a particular person does not mean necessarily that it is directed at that person. . . ." *Id.* at 854.

Similar to Wisconsin's, Florida's stalking statute requires that the prohibited acts be "directed at a specific person." Fla. Stat. §784.048(2). In *Curry v. State*, 811 So.2d 736, 741 (Fla. App. 2002), the Court held that "stalking" under this statute "retains the concept of some type of contact, whether it is verbal, direct, or indirect, between the stalker and the victim." In *Chevaldina v. R.K./FL Management, Inc.*, 133 So.3d 1086 (Fla. App. 2014), the Court reversed a preliminary injunction, finding that derogatory internet blog posts about a person were not "directed at" that person under the terms of the stalking statute. *Id.* at 1091-92. In *Scott v. Blum*, 191 So.3d 502 (Fla. App. 2016), the same court overturned an injunction for protection from cyberstalking on the grounds that Scott's repeated emailing

and derogatory posts and comments about Blum to other members of a professional organization both men belonged to did not constitute a course of action "directed at" Blum. *Id.* at 504-05.  *See also David v. Textor*, 189 So.3d 871, 875 (Fla. App. 2016) (overturning cyberstalking injunction on grounds that David's email to other business associates of Textor and posts on social media with links to articles about Textor were not a course of action "directed at" Textor because "where comments are made on an electronic medium to be read by others, they cannot be said to be directed to a particular person").

Massachusetts has a similar stalking or "criminal harassment" statute that requires, among other things, a series of acts "directed at a specific person."  Mass. G.L. c.265, §43A(a).  In *Commonwealth v. Welch*, 825 N.E.2d 1005 (Mass. 2005), *abrogated on other grounds*, *O'Brien v. Borowski*, 961 N.E.2d 547 (Mass. 2012), the Massachusetts Supreme Court held that "this provision, by its plain terms, requires the Commonwealth to establish, at the very least, that the defendant intended to target the victim with the harassing conduct . . .." 825 N.E.2d at 1014 (emphasis added).

The Court went on to hold that neither the defendant's disparaging comments to a third party about the complainants nor her yelling about them while in her own apartment were "directed at" the complainants even though they overheard the comments. *Id.* at 115-16. "[T]he record does not establish that the defendant intended the statements to be heard by Robichau or Brienza, nor that she should have known that the statements would be heard by them."  *Id.*[9]

Arizona, too, has a statute authorizing injunctions against "harassment," which is defined to require, *inter alia*, that the defendant committed a series of acts "that is directed at a specific person."  Ariz. R. S. §§12-1809(E) & (R).  In *LaFaro v. Cahill*, 56 P.3d 56 (Ariz. 2002), the Arizona Supreme Court held that the acts, to be considered, must be directed at the alleged victim; merely talking about the victim with a third party is not enough.  **Id.** at 59-60 (footnote omitted).

---

[9]    *Compare **Commonwealth v. Johnson**, 21 N.E.3d 937, 948 (Mass. 2014) (posting false Craig's List ads causing unwitting third parties to contact and harass victim was conduct "directed at" victim, "the equivalent of the defendants recruiting others to harass the victims and the victims alone").

These decisions, all addressing the same language at issue here, and all but one addressing electronic communications like Ardell's, uniformly confirm the plain meaning of the statutory requirement that the relevant "course of action" be "directed at a specific person," in this case, N.T. Communications or conduct involving third parties and not intended to be transmitted to or used to harass the alleged victim do not legally qualify under the plain meaning of the statutory language.

Actions by other states uniformly interpreting the same statutory language are relevant to whether Wisconsin's contrary interpretation is "unexpected and indefensible by reference to the law as it then existed" at the time of Ardell's conduct. *Rogers v. Tennessee*, 532 U.S. 451, 463-64 (2001). Although the court below deemed these decisions non-controlling and sought to distinguish them on the grounds that they involved digital communications while Ardell's communications involved email, its main objection was to their uniform recognition that, as Ardell argued, the plain meaning of the stalking language at issue here requires an intent that the substance of the communications be relayed to the alleged victim. (Attach. 2 at 13-14).

**Wis. Stat. §940.32(4).–** Although overlooked by the state court, Wis. Stat. §940.32(4) provides that the stalking statute "does not apply" to conduct protected by the First Amendment, and specifically identifies exactly the conduct Ardell was accused of – "[g]iving publicity to and obtaining or communicating information regarding any subject. . ." – as protected. Wis. Stat. §940.32(4)(a)1.

The notice requirement of due process prevents a state from criminalizing that which the statute itself, as here, appears to permit. *United States v. Cardiff*, 344 U.S. 174, 176–77 (1952) ("We cannot sanction taking a man by the heels for refusing to grant the permission which this Act on its face apparently gave him the right to withhold. That would be making an act criminal without fair and effective notice.").

**Free Speech Rights.–** Although overlooked by the state court, "a statute . . . which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind." *Watts v. United States*, 394 U.S. 705, 707 (1969); *e.g.*, *United States v. X–Citement Video, Inc.*, 513 U.S. 64 (1994) (construing *mens rea* element re age into child pornography statute to protect its constitutionality).

Criminalizing communications conducted with third parties for purposes of obtaining or communicating information about the alleged victim violates the defendant's First Amendment rights absent an intent that they be communicated to the alleged victim or encourage harassment of the alleged victim. *See R.A.V. v. St. Paul*, 505 U.S. 377, 387 (1992) (The states generally may not proscribe speech based on its content).

It is the intended recipient of the communication, not its substance, that distinguishes protected from unprotected in this context. *Compare Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971) (First Amendment bars enjoining defendants from distributing leaflets that criticized Keefe's business practices in Keefe's neighborhood), *with Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 737, 738 (1970) (no First Amendment right to press even good ideas on individual who asks to be left alone). The requirement of direct or indirect contact or intended contact between the defendant and the alleged victim thus is necessary both to protect the statute from Constitutional challenge, *see, e.g., Welch*, 825 N.E.2d at 1018-19, and to harmonize the statute with the express exception under §940.32(4)(a).

The state court's interpretation criminalizing communications that are *about* the alleged victim but that the defendant does not intend to be communicated to the alleged victim or to cause others to harass the alleged victim thus does exactly what the First Amendment prohibits. *People v. Relerford*, 104 N.E.3d 341 (Ill. 2017) (Stalking statute facially unconstitutional to extent it criminalizes communications "about" alleged victim).

While the Supreme Court has recognized certain categorical exceptions to this rule, such as "fighting words," *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942), and "true threats," *Watts, supra*, neither applies to communications with third parties that the defendant did not intend to be communicated to the alleged victim.

"Fighting words" require direct personal insult to the immediate hearer. *Welch*, 825 N.E.2d at 1019, citing *Cohen v. California*, 403 U.S. 15, 20 (1971). Nor can comments to a third party about the alleged victim satisfy the test for a "true threat" absent proof and a jury finding that the defendant intended that the comments be relayed to the alleged victim. A "true threat" is defined in terms of its impact on "the listener," not some other alleged victim who is neither present to hear the alleged threat nor the intended recipient.

*See, e.g.*, *State v. Perkins*, 2001 WI 46, ¶29, 243 Wis.2d 141, 626 N.W.2d 762.

The Legislature intended – indeed, directed – that the statute *not* be interpreted to infringe on the rights of individuals, like Ardell, to seek out and disseminate information "regarding any subject" merely because, as alleged here, it relates to an alleged victim. Wis. Stat. §940.32(4). The state court's expansion of §940.32 to criminalize inquiries of, and dissemination of information to, third parties absent any intent that they be relayed to the alleged victim violates that intent and risks criminalizing much of the zealous advocacy required of private investigators, litigation attorneys, and even police officers. Such investigations, intended to ferret out fraud, perjury, and the like, are constitutionally protected yet could be deemed intimidating or threatening, or harassing by the target of the investigation.

The state court overlooked that point, citing exactly such protected investigation as *justifying* its expansion of the statute:

> The purpose of the July 4 email was to tell the principal about N. making false statements and obtaining restraining orders against Ardell on false grounds. The purpose of the July 23 email was to find out whether N. had been encouraged by the principal to petition for the injunction; it referred to a prior phone call when Ardell had asked the principal the same question.

(Attach. 2 at 15; *see also id.* at 19-20 ("The statute's plain language criminalizes sending material for those purposes—obtaining information about and disseminating information about—as well as "communicating with the victim." The emails to the principal had both of those purposes.").

That state court also overlooked the fact that, because its interpretation implicates First Amendment rights, the state had the burden of proving beyond a reasonable doubt that the application is constitutional. *E.g.*, *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000). Yet, the state effectively conceded, by choosing not to dispute Ardell's argument on the issue in state court, *see* State's Court of Appeals Brief, that removing the requirement that the defendant intended his or her communications with third parties be relayed to the alleged victim cannot satisfy that burden. *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis.2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979) (that not disputed is deemed conceded).

The stalking statute cannot constitutionally (or consistently with §940.32(4)) be applied to a defendant's statements to a third party about the alleged victim absent a jury verdict beyond a reasonable doubt that the defendant intended the substance to be communicated to or to cause harassment of the alleged victim. The state court's decision doing just that thus was unforeseeable and indefensible by reference to existing authority, and thus cannot be applied retroactively to Ardell consistent with due process. *Bouie*, *supra*. He accordingly was denied his right to a jury verdict on all facts necessary for conviction under the plain meaning of the statute and is entitled to a new trial.

### 3. Failure to instruct on the subjective intent and knowledge requirements

The state court neither acknowledged nor addressed Ardell's additional claim that, even separate from the failure of the state's legal theory, the instructions failed to require a jury finding beyond a reasonable doubt of all facts necessary for conviction because they failed to require such proof that Ardell had (1) the subjective intent or purpose that his actions would cause a reasonable person serious distress or fear of bodily injury, as required by Wis. Stat. §940.32(2)(a), and (2) knowledge that his actions *would* cause N.T. serious distress or reasonable fear of bodily injury, as required by Wis. Stat. §940.32(2)(b). *See* Ardell's Court of Appeals Brief at 26-27.

Wis. Stat. §940.32(2)(a) requires that "the actor *intentionally* engage[d] in a course of conduct directed at a specific person *that would cause a reasonable person under the same circumstances to . . . fear bodily injury*," etc. (Emphasis added). As noted previously, Wis. Stat. §939.23(3) defines "intentionally" as meaning

> that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result.

It also requires that the "actor must have knowledge of those facts which are necessary to make his or her conduct criminal and which are set forth after the word 'intentionally.'" Wis. Stat. §939.23(3).

Because this causation of fear requirement follows the term "intentionally" and is part of the "result specified," the statute thus requires that Ardell had the subjective intent to cause such fear or knew it was practically certain to result. Yet, no instruction required such subjective intent or knowledge of practical certainty on Ardell's part. (*See* R95:43-46).

A finding of negligence, i.e., that Ardell "*knew or should have known* that at least one of the acts constituting the course of conduct could place [N.T.] in reasonable fear of bodily injury . . ." (R95:45 (emphasis added)), is not the same as the statutory requirement that Ardell either intended that the course of conduct have that effect or knew that his actions *would to a practical certainty* cause that result.

Likewise, the instruction's "could cause" language does not even conform to the separate statutory requirement that the defendant know or should know that his actions "will cause" such fear. Wis. Stat. §940.32(2)(b). "Could cause" references a mere possibility, while "will cause" requires a particular consequence. As such, the instructions unconstitutionally failed to require a jury finding beyond a reasonable doubt of all facts necessary for conviction. *E.g.*, *Roy*, *supra*.

### C.   Ardell Did Not Forfeit His Right to a Jury Verdict Beyond a Reasonable Doubt on All Facts Necessary for Conviction

The state court suggests that Ardell forfeited his right to a jury verdict beyond a reasonable doubt on all facts necessary for conviction because the arguments regarding the "directed at" requirement and the First Amendment "were not made at the circuit court."(Attach. 2 at 18). The court is wrong, Ardell did raise his claims in his post-conviction motion in the circuit court (R54). Presumably, the court meant that Ardell forfeited objection by not objecting to the instructions at trial.

If so, that court once again overlooks controlling Wisconsin law. Although the failure to object generally is deemed a forfeiture of the right to challenge defective jury instructions, Wis. Stat. §805.13; *see State v. Schumacher*, 144 Wis.2d 388, 398-99, 424 N.W.2d 672, 676 (1988), the failure to instruct on a necessary element of the offense in effect constitutes a directed verdict on that element. Accordingly, any waiver or forfeiture of the right to a jury verdict on all facts necessary for conviction must be made during the court's personal colloquy with the defendant demonstrating his knowledge of that right and that his actions would waive it. *E.g.*, *State v. Smith*, 2012 WI 91, ¶¶52-57, 342 Wis.2d 710, 817 N.W.2d 410; *State v. Hauk*, 2002 WI App 226; ¶34, 257 Wis.2d 579, 652 N.W.2d 393, citing *State v. Livingston*, 159 Wis.2d 561, 569, 464 N.W.2d 839 (1991).

Because Ardell neither personally waived his right to a verdict beyond a reasonable

doubt of all facts necessary for conviction nor demonstrated any knowledge that the instructions would deny him that right, counsel's failure to object to the errors did not forfeit his right to challenge them. *E.g.*, *Smith*, *supra*. Because the state court's "forfeiture" holding conflicts with decisions such as *Smith*, it does not represent the type of "firmly established and regularly followed state practice" (being neither) that may be interposed by a state to prevent subsequent federal review of a federal constitutional claim. *E.g.*, *James v. Kentucky*, 466 U.S. 341, 348-51 (1984).

## II. BY FAILING TO REQUIRE THAT ARDELL INTENDED HIS COMMUNICATIONS WITH THIRD PARTIES TO IMPACT THE ALLEGED VICTIM BY BEING RELAYED TO HER OR USED TO HARASS HER, THE INSTRUCTIONS PERMITTED CONVICTION FOR CONSTITUTIONALLY PROTECTED SPEECH AND JUSTIFIES HABEAS RELIEF

As already demonstrated, *see* Section I,B,2,b,ii, *supra*, the state court's interpretation of the Wisconsin stalking statute as it applies to communications with third parties violates the First Amendment by permitting conviction for constitutionally protected communications without requiring the intent minimally necessary to criminalize such conduct (i.e., that the communications impact the alleged victim by being relayed to her or used to harass her). The state court failed to decide this issue on its merits as well, wrongly believing that counsel's failure to object to the instructions' failure to require a jury finding beyond a reasonable doubt of all facts necessary for conviction "forfeited" the issue. (Attach. 2 at 18). *See Section* I,C, *supra*. This issue thus is reviewed *de novo* without deference under AEDPA. *Rompilla*, 545 U.S. at 390.

Having already demonstrated that the instructions as given permitted conviction for constitutionally protected communications and that the state court's "forfeiture" holding does not rest on a "firmly established and regularly followed state practice," it is not necessary for Ardell to repeat those showings here.

## III. ANY FORFEITURE OF ARDELL'S CHALLENGE TO THE DENIAL OF HIS RIGHT TO A JURY VERDICT BEYOND A REASONABLE DOUBT ON ALL FACTS NECESSARY FOR CONVICTION DENIED HIM THE EFFECTIVE ASSISTANCE OF COUNSEL AND JUSTIFIES HABEAS RELIEF

Because Ardell did not personally waive his right to a jury verdict beyond a reasonable doubt on all facts necessary for conviction, Wisconsin law provides that he did

not forfeit that right. *E.g.*, *Smith*, *supra*. The state court here accordingly did not rely upon a "firmly established and regularly followed state practice" in concluding that Ardell forfeited that right. Should this Court nonetheless somehow conclude that Ardell forfeited his right to a jury verdict beyond a reasonable doubt on all facts necessary for conviction, then trial counsel's failure to object denied Ardell the effective assistance of counsel.

A defendant raising ineffectiveness must show first "that counsel's performance was deficient" and second that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Deficient performance occurs when "counsel's representation fell below an objective standard of reasonableness" on the specific facts of the case. *Strickland,* 466 U.S. at 688. *Strickland's* deficiency prong is met when counsel's failures resulted from oversight rather than a reasoned defense strategy. *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

Although Wisconsin courts have suggested that reasonable counsel only objects when the law is clear, *e.g.*, *State v. Jackson*, 2011 WI App 63, ¶10, 333 Wis.2d 665, 799 N.W.2d 461, that irrational and arbitrary restriction conflicts with the case-by-case reasonableness analysis mandated by *Strickland* and overlooks the myriad of means in which counsel can act unreasonably under that analysis even when the law is unsettled.

The state courts' *per se* rule originally derived from the recognition in *State v. Hubert*, 181 Wis. 2d 333, 341, 510 N.W.2d 799 (Ct. App. 1993), that "[w]e would hold defense attorneys to an impossible burden were we to require total and complete knowledge of all aspects of reported criminal law, no matter how obscure." Over time, however, that common sense notion based on the facts of the particular case morphed into the irrational *per se* rule relied upon by the court below that, "[w]hen the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance." *Jackson*, 2011 WI App 63, ¶10 (Attach. 2 at 3 fn.2, 18-19).

*Strickland's* case-by-case analysis for assessing the reasonableness of counsel's actions is necessarily controlling here. The state court's *per se* rule renders the circumstances surrounding counsel's actions irrelevant and thus necessarily conflicts with (or represents an unreasonable application of) that standard. The state court's decision accordingly is not entitled to deference under AEDPA and Ardell's ineffectiveness claim

must be reviewed *de novo*. 28 U.S.C. §2254(d)(1).[10]

In addressing this claim with regard to Ardell's "directed at" and First Amendment claims, the state court applied a logically and constitutionally defective legal standard by holding that counsel cannot act unreasonably by failing to object when the law is unclear. (App. 18-20).

Ardell's claims here would have been obvious to any reasonably informed and conscientious attorney in trial counsel's position. He would have known Ardell's position that he did not intend the emails to Hagen to be passed on to N.T. or that he otherwise have contact with N.T., and he would have known the plain language of the statute: the "intentionally . . . directed at" language of §940.32(2)(a), the "*will . . . place* [N.T.] in reasonable fear" language of §940.32(2)(b), and §940.32(4)'s specific exclusion from liability for actions such as the "[g]iving publicity to and obtaining or communicating information regarding any subject. . ." upon which Ardell's conviction is based. Likewise, such an attorney would have easily discovered long-established Supreme Court authority under the First Amendment to the effect that such actions are constitutionally protected as long as they are not communicated or intended to be communicated to the alleged victim. *Compare Organization for a Better Austin, supra* (First Amendment bars enjoining defendants from distributing leaflets that criticized Keefe's business practices in Keefe's neighborhood), *with Rowan*, 397 U.S. at 737, 738 (no First Amendment right to press even good ideas on individual who asks to be left alone).

## IV.   THE IDENTIFIED ERRORS PREJUDICED ARDELL'S DEFENSE AT TRIAL

The identified errors not only denied Ardell the right to a jury verdict beyond a reasonable doubt on all facts necessary for conviction; they deprived him of a fair trial and

---

[10]     The state court also suggested that trial counsel acted reasonably because it had rejected Ardell's interpretation of the "directed at" language of §940.32(2) as a matter of state law. (Attach. 2 at 19-20). However, Ardell does not here challenge that court's general authority as a matter of state law to interpret a law as it chooses for purposes of *future* cases, no matter how irrational that interpretation may be, *e.g.*, *Estelle v. McGuire*, 502 U.S. at 67-68; *Douglas v. City of Jeannette*, 319 U.S. at 163. Moreover, beyond concluding irrationally that *Strickland's* circumstance-based reasonableness analysis has been superceded by Wisconsin's *per se* rule, the state court did not decide any of the issues Ardell raises on their merits. Habeas review thus remains *de novo* without deference under AEDPA. *Rompilla*, 545 U.S. at 390.

reliable verdict. Given that the state's case against Ardell effectively relied entirely on an erroneous and unconstitutional legal theory, the errors were not remotely harmless.[11]

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). While the standard for resulting prejudice is slightly more forgiving of state errors on habeas, *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (error is harmless if it had no "substantial and injurious effect or influence in determining the jury's verdict" (citations omitted)), an error is not harmless unless the Court is convinced that "the error did not influence the jury, or had but very slight effect." *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995)). If the Court is not fairly assured that there was no effect on the verdict, it must reverse. *Id.* In the "narrow circumstance" in which the Court is in "grave doubt" as to the effect of the constitutional error, it must assume that there was such an effect and grant the petition. *Id.* at 436, 438.

The state's case against Ardell relied solely upon its mistaken theory that a stalking conviction could be based on his communications to third parties – Hagen, Fischer, the M.P.S., and ADA Westphal – (R95:53-59, 86-87), despite the absence of proof beyond a reasonable doubt that Ardell intended that those communications would be relayed to N.T. or used by third parties to harass her. Indeed, the state presented no evidence that N.T. even knew about Ardell's communications or attempted communications with Fischer or Westphal. They thus could not have caused her to fear as required by §940.32(2)(c). The state also admitted in closing that Ardell's open records requests to M.P.S. would not support a stalking conviction (R95:56).

The state's argument thus boiled down to repeatedly asserting that the Hagen emails were sufficient for conviction (R95:54-59, 84-87). The jury apparently bought into the state's theory since those emails were among the first exhibits specifically requested during deliberations. (R94:12; *see* R100:Exhs.9-13).

---

[11] The state court did not address resulting prejudice or harmlessness. The issue thus is reviewed *de novo*, *Rompilla*, 545 U.S. at 390, with deference limited to that under *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993). *Compare Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (where state court decided harmlessness on the merits, federal habeas court must apply deference under AEDPA as well as *Brecht*).

Where, as here, the state's case at trial relied almost entirely, if not exclusively, on evidence supporting an invalid legal theory, that error will always have a substantial impact on the verdict. *Cf. Kyles v. Whitley*, 514 U.S. 419, 448 (1995) ("If a police officer thought so, a juror would have, too" (footnote omitted)). The state presented little or no evidence, and the instructions did not require the jury to find, that Ardell intended any of the third party communications to get back to N.T., let alone that he either intended that they cause her to fear or that he knew that they would cause such fear.

Harmless error analysis bars this Court from interposing itself as some sort of "super-jury." *Neder v. United States*, 527 U.S. 1, 19 (1999). Where, as here, the defendant contested the issue and the evidence viewed most favorably to the defendant supports his theory, it is for the jury to determine whether to believe it. *Neder*, 527 U.S. at 19 ("where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding [the court] should not find the error harmless").

Although a jury technically could believe them, N.T.'s allegations do not change this analysis or result. The state reasonably chose not to dispute the evidence that N.T.'s own allegations lacked credibility (R95:57, 86) because:

– N.T.'s own phone records disproved her claim that Ardell called and threatened her (R91:42-53; R107:Exhs.110-112),

– unbiased third party witnesses and documentary evidence showed that Ardell was far away working or in court at the time she claimed he was sitting outside her house (R90:114-20; R91:10-26, 57-68; R103:Exh.105; R105:Exh.107; R107:Exh. 113; R111:Exhs.124-126, 128; *see also* R92:66-77 (Ardell working in Wausau area May 23-24, 2013, not outside N.T.'s house or following her to work in Milwaukee); (R90:121-26; R91:27-40, 63-69; *see* R93:6-22; R104:Exh.106; R106:Exh.109; R110:Exh.119; R111:Exh.132-134; R112:Exh.135; R113:Exhs.136-137 (Ardell in Green Lake area working July 28-August 2, 2014 (except attended court hearing in Manitowoc morning of July 31, 2014), not sitting outside N.T.'s house or following her to work in Milwaukee)), and

– evidence indicated that she encouraged a neighbor to commit perjury in support of her story (R90:104-13).

The prosecutor who viewed first hand the testimony of the complainant and the independent witnesses rebutting her claims chose to disregard her testimony and to focus on the undisputed evidence of Ardell's emails to Hagen (R95:57, 86). The jury thus easily could have done so as well. *Cf. Kyles*, *supra*.

## CONCLUSION

For these reasons, Mr. Ardell respectfully asks that the Court issue the requested writ of habeas corpus to have him brought before it to the end that he may be discharged from his unconstitutional confinement and restraint.

Dated at Milwaukee, Wisconsin, July 30, 2019.

Respectfully submitted,

P.O. ADDRESS:                              KORRY ARDELL, Petitioner

316 N. Milwaukee St., #535          HENAK LAW OFFICE, S.C.
Milwaukee, Wisconsin 53202
(414) 283-9300                                  s/ Robert R. Henak
(414) 283-9400 (fax)                      Robert R. Henak
henaklaw@sbcglobal.net              State Bar No. 1016803

Habeas Memo.wpd