# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**KORRY L. ARDELL,**

                          **Petitioner,**

          **v.**                          **Case No. 19-CV-1097**

**JOSH KAUL,**
**Wisconsin Attorney General,**

                          **Respondent.**

## DECISION AND ORDER

### 1. Background

Korry Ardell insists he is an innocent man just trying to clear his name. But the state contends he is an obsessive ex-boyfriend bent on destroying the life of a woman who dumped him.

Ardell and N.T. briefly dated in 2007. *State v. Ardell*, 2018 WI App 28, ¶ 1, 381 Wis. 2d 471, 915 N.W.2d 455, 2018 Wisc. App. LEXIS 281 (unpublished). When N.T. broke off the relationship, Ardell continued to contact her and monitor her emails despite N.T.'s pleas to be left alone. *Ardell v. Thomas*, 2010 WI App 71, ¶ 2, 325 Wis. 2d 400, 786 N.W.2d 488, 2010 Wisc. App. LEXIS 253 (unpublished).

When N.T. booked a flight, Ardell fabricated communications, purportedly from a travel website, to lead N.T. to believe that her flight had been rescheduled. *Id*. When N.T. missed her flight and incurred additional expenses as a result, she demanded that Ardell reimburse her. *Id*. at ¶ 3. After Ardell showed up at N.T.'s home, ostensibly to reimburse her, a confrontation resulted, which led to each of them seeking restraining orders against the other. *Id*. at ¶¶ 3-4. The circuit court granted N.T.'s request in July of 2008 but denied Ardell's. *Id*. at ¶ 4.

Ardell appealed. The court of appeals affirmed, 2010 WI App 71, and the Wisconsin Supreme Court denied Ardell's petition for review, *Ardell v. Thomas*, 2010 WI 125, 329 Wis. 2d 372, 791 N.W.2d 381, 2010 Wisc. LEXIS 522.

Ardell violated the restraining order by sending N.T. text messages on October 30, 2008. *State v. Ardell*, 2012 WI App 27, ¶ 2, 339 Wis. 2d 492, 809 N.W.2d 901, 2012 Wisc. App. LEXIS 1 (unpublished). Ardell pled guilty in November of 2009. Following the plea hearing, N.T. submitted a victim impact statement referring to several emails that she believed Ardell had sent within the last two weeks to her coworkers and a newspaper, accusing her of being a drug addict as well as accusing her of what she described as "various horrible things." *Id*. at ¶ 5.

After he was sentenced to 90 days in jail and two years of probation, Ardell sought to withdraw his guilty plea. *Id*. at ¶¶ 9-10. The circuit court denied the motion, the court of appeals affirmed, 2012 WI App 27, and the Wisconsin Supreme Court

denied review, *State v. Ardell*, 2012 WI 45, 340 Wis. 2d 545, 811 N.W.2d 820, 2012 Wisc. LEXIS 282.

On November 4, 2012, Ardell sent a letter to the human resources director of the school district where N.T. worked as a teacher, accusing N.T. of prostitution. (ECF No. 14-4 at 20.) Later that month Ardell submitted an open records request to N.T.'s employer, requesting N.T.'s personnel file. (ECF No. 14-4 at 21); *State ex rel. Ardell v. Milwaukee Bd. of Sch. Dirs.*, 2014 WI App 66, ¶ 2, 354 Wis. 2d 471, 849 N.W.2d 894. Following up on his open-records request in a December 2012 letter to N.T.'s employer, Ardell again accused N.T. of prostitution. (ECF No. 14-4 at 22.) The employer denied the open records request, as did the circuit court, *see Ardell v. Milwaukee Board of School Directors*, Milwaukee Cnty. Cir. Ct. Case No. 2013CV002202 (available at https://wcca.wicourts.gov/), and the court of appeals, *Ardell*, 2014 WI App 66, ¶ 2. The Wisconsin Supreme Court denied Ardell's request for review. *Ardell v. Milwaukee Bd. of Sch. Dirs.*, 2014 WI 122, 358 Wis. 2d 606, 855 N.W.2d 696, 2014 Wisc. LEXIS 913.

On May 23, 2013, the day the circuit court denied Ardell's petition for access to N.T.'s personnel file, Ardell allegedly called N.T. and threatened to kill her. *Thomas v. Ardell*, 2015 WI App 1, ¶ 2, 359 Wis. 2d 270, 857 N.W.2d 487, 2014 Wisc. App. LEXIS 932 (unpublished). N.T. also alleged that the next morning Ardell was parked outside her house. *Id.* at ¶ 2. These events, with the encouragement of her principal, prompted N.T. to obtain a new restraining order against Ardell. *See* Milwaukee Cnty. Cir. Ct. Case No.

2013FA003711 (available at https://wcca.wicourts.gov/); *Thomas*, 2015 WI App 1, ¶ 2. After the circuit court granted the injunction, Ardell appealed, and the court of appeals affirmed. *Thomas*, 2015 WI App 1.

On July 4, 2014, Ardell sent four emails to N.T.'s now former principal (the principal having begun working in a new district). (ECF No. 14-4 at 12-13; 14; 15; 16.) In the first email Ardell stated that he believes the principal was N.T.'s former supervisor and asserted that N.T. "has filed two frivolous restraining orders against me in the past." (ECF No. 14-4 at 12.) He attached various documents related to the injunction hearing and requested that the principal respond to him, apparently to let him know whether she had recommended that N.T. obtain a restraining order, as N.T. testified to at a hearing.

On July 23, 2014, Ardell again emailed N.T.'s former principal. He stated that he "became aware that you are possibly still conspiring with [N.T.] on the last frivolous restraining order that she filed against me." (ECF No. 14-4 at 17.) He referred to having called and spoken with the principal about a week earlier. (ECF No. 14-4 at 17.) He threatened to have organized protests outside the school where the principal now worked and to take out a radio ad. (ECF No. 14-4 at 17.) Ardell stated that he would be filing a lawsuit against the principal and her school board. (ECF No. 14-4 at 17.) After expressing his frustration about having allegedly been the subject of false allegations that led to a restraining order, he stated, "Perhaps you being new to the Fond Du Lac

area, didn't hear about the last police officer that was killed there? Well anyways long story short from what I gather this stemmed from a woman from what I heard filed a false police report that she was assaulted by the shooter who killed these officers." (ECF No. 14-4 at 18.) He later stated, "I will not anymore deal with this at anymore [sic] at any cost. I will get this restraining order and the first restraining order investigated one way or another." (ECF No. 14-4 at 18.)

Based on Ardell's contact with N.T.'s school district and her former principal, as well as N.T.'s allegations that Ardell had contacted her and was outside her house, Ardell was charged with stalking and violating a restraining order. At trial Ardell introduced evidence that he was working far away from N.T.'s home when she alleged he was outside, as well as phone records undercutting N.T.'s allegations that Ardell had contacted her. Thus, Ardell's communications with the school district, and especially with N.T.'s former principal, became central to the state's case.

 Ardell's theory was that he was merely trying to investigate N.T. and prove that she lied to obtain the restraining order against him. (*See, e.g.*, ECF No. 12-11 at 14.) In other words, he did not act with the requisite intent to stalk her.

The jury found him guilty of both the stalking and violation of injunction charges. (ECF No. 12-18 at 8.) Following the verdict, the state moved to dismiss the charge related to violation of the injunction. (ECF No. 12-18 at 11.) The court granted the motion and entered judgment on the stalking charge. (ECF No. 12-18 at 11-15.) The

court sentenced Ardell to two years in prison, followed by three years of extended supervision, as well as a $7,500 fine. (ECF No. 12-1 at 2.)

Ardell unsuccessfully moved for post-conviction relief in the circuit court (ECF No. 14-7) and then appealed his conviction and the circuit court's denial of his motion for post-conviction relief (ECF No. 12-2). The Wisconsin Court of Appeals affirmed the decision of the circuit court and Ardell's conviction. (ECF No. 12-5; *Ardell*, 2018 WI App 28, ¶ 1.) Ardell moved the court of appeals to reconsider its decision (ECF No. 12-6), which motion it denied (ECF No. 12-7). The Wisconsin Supreme Court denied Ardell's petition for review. (ECF Nos. 12-8; 12-10.)

Ardell then filed the present petition for a writ of habeas corpus in this court. (ECF No. 1.) The briefing on the petition is complete and the matter is ready for resolution. All parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 4, 9.)

## 2. Applicable Law

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court is permitted to grant relief to a state petition under 28 U.S.C. § 2254 only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). This is a "stiff burden." *Jean-Paul v. Douma*, 809 F.3d 354, 359 (7th Cir. 2015). "The state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Carter v. Douma*, 796 F.3d 726, 733 (7th Cir. 2015)); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011).

"Clearly established federal law" refers to a holding "of the United States Supreme Court that existed at the time of the relevant state court adjudication on the merits." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015) (citing *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A decision is 'contrary to' federal law if the state court applied an incorrect rule—*i.e.*, one that 'contradicts the governing law' established by the Supreme Court—or reached an outcome different from the Supreme Court's conclusion in a case with 'materially indistinguishable' facts." *Id.* (quoting *Williams*, 529 U.S. at 405-06). A decision involves an unreasonable application of federal law if the state court identified the correct governing principle but applied that principle in a manner with which no reasonable jurist would agree. *Id.*; *see also Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A court's application of Supreme Court precedent is reasonable as long as it is 'minimally consistent with the facts and

circumstances of the case.'" *Williams v. Thurmer*, 561 F.3d 740, 743 (7th Cir. 2009) (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)).

"Even a clearly erroneous state court decision is not necessarily an unreasonable one." *Miller v. Smith*, 765 F.3d 754, 760 (7th Cir. 2014). Thus, a federal court could have the "firm conviction" that a state court's decision was incorrect but, provided that error is not objectively unreasonable, nonetheless be required to deny the petitioner relief. *Lockyer*, 538 U.S. at 75-76.

## 3. Custody and Jurisdiction

In a footnote in his amended memorandum in support of his petition Ardell states that he remains in custody because he is on extended supervision. Extended supervision, which is Wisconsin's version of parole, *United States v. Caya*, 956 F.3d 498, 503 (7th Cir. 2020), constitutes custody under 28 U.S.C. § 2254(a), *Jones v. Cunningham*, 371 U.S. 236, 240-43 (1963). However, according to online records of the Wisconsin Department of Corrections, Ardell has since completed his term of extended supervision. Having said that, Ardell's petition is not moot simply because he is no longer in custody; it is sufficient that he was in custody when he filed it. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

But that does not necessarily mean that the court retains jurisdiction to adjudicate the petition. There still must be a case or controversy under Article III, § 2 of the Constitution. *Spencer*, 523 U.S. at 7. The fact that any criminal conviction may result

in a variety of future collateral consequences is ordinarily sufficient to sustain a live case or controversy. *Id.* at 8 (citing *Sibron* v. *New York*, 392 U.S. 40, 55-56 (1968)).

The respondent does not argue that Ardell's petition ceases to present a case or controversy. Therefore, the court finds that it has jurisdiction to resolve the petition. However, because Ardell is not currently in the custody of any official, the respondent in this matter is changed to the Attorney General of the State of Wisconsin.

## 4. Analysis

Wisconsin's stalking statute states, in relevant part,

Whoever meets all of the following criteria is guilty of a Class I felony:

(a) The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household.

(b) The actor knows or should know that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional distress or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household.

(c) The actor's acts cause the specific person to suffer serious emotional distress or induce fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.

Wis. Stat. § 940.32(2) (2015-16).

Ardell argues that the jury instructions failed to require the jury to find beyond a reasonable doubt all facts necessary to convict him of stalking. (ECF No. 15-1 at 11-26.)

He points to three alleged errors. First, the instructions did not inform the jury that, for a course of conduct to be "directed at a specific person," the actor must have "either intended the substance of those communications to be relayed to her or used to harass her, and not merely be about her." (ECF No. 15-1 at 11.) Second, the jury was not instructed that it needed to find beyond a reasonable doubt "[t]hat Ardell's course of conduct was pursued with the subjective intent or purpose that his actions would cause a reasonable person serious emotional distress or fear of bodily injury." (ECF No. 15-1 at 11.) Third, the court mis-instructed the jury when it stated that it need find only that Ardell knew or should have known that at least one of the acts "could" (as opposed to "would") place N.T. in reasonable fear of bodily injury or death. (ECF No. 15-1 at 11.)

He also argues that the state courts' interpretation of "directed at" was "unforeseeable and indefensible" so as to violate due process when retroactively applied to him. (ECF No. 15-1 at 14.) Finally, he argues that the state courts' interpretation of the stalking statute violated the First Amendment by criminalizing protected conduct.

Under Wisconsin law, claims of constitutional error and objections to the adequacy of jury instructions ordinarily must be properly raised in the trial court. *State v. Huebner*, 2000 WI 59, 235 Wis. 2d 486, 492, 611 N.W.2d 727, 730 ("It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the circuit court, even alleged constitutional errors, generally

will not be considered on appeal."). Raising an issue in a motion for post-conviction relief in the circuit court is not enough. *Cf. Huebner*, 2000 WI 59, ¶ 83 (Abrahamson, C.J., dissenting) (asserting in dissent that the majority should have accepted defendant's motion for post-conviction relief in the circuit court as sufficient to preserve the issue for appeal). Issues that are not properly preserved are waived.

The court of appeals found that the only issue Ardell properly preserved for appeal was his claim that the circuit court, relying on what Ardell argued was an improper interpretation of "directed at" in the statute, admitted the emails Ardell sent to N.T.'s former principal. *Ardell*, 2018 WI App 28, ¶¶ 24-40. That claim, however, is solely a matter of state law and, therefore, is beyond the scope of a federal habeas petition. *See Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990).

The court of appeals concluded that Ardell had waived all other claims by failing to properly present them to the circuit court. *Ardell*, 2018 WI App 28, ¶ 41. Therefore, as to the claims Ardell presents to this court, the court of appeals considered his due process, First Amendment, and jury instruction claims "under the rubric of ineffective assistance of counsel." *Id.* at ¶ 42

Because the court of appeals relied on adequate and independent state law grounds (*i.e.*, Wisconsin's requirement that constitutional and jury instruction challenges must be raised prior to conviction) to decline to directly consider the merits of the claims Ardell presents in his petition, *see Promotor v. Pollard*, 628 F.3d 878, 886-87

(7th Cir. 2010), this court likewise must consider the claims only through the lens of a claim of ineffective assistance of counsel. Although Ardell argues that the court of appeals erred in finding that he waived these arguments, this court cannot review such questions of state law. *See Oaks v. Pfister*, 863 F.3d 723, 727 (7th Cir. 2017).

Claims of ineffective assistance of counsel are governed by the well-established two-prong approach set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017). A petitioner must demonstrate both that his attorney's performance was deficient and that he was prejudiced as a result. *Id.* at 525-26. The first prong "requires that the petitioner demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.* at 525. "What is objectively reasonable is determined by the prevailing professional norms." *Id.* But there is a wide range of permissible conduct, and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). The prejudice prong "requires the petitioner to demonstrate a 'reasonable probability that, but for counsel's unprofessional errors,' the outcome would have been different." *Id.* at 526 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009)).

When a claim of ineffective assistance of counsel is presented in a habeas petition, the petitioner faces "a high hurdle." *Hicks*, 871 F.3d at 525. "The Supreme Court has instructed that under these circumstances, [the federal court] must employ a

'doubly deferential' standard, one which 'gives both the state court and the defense attorney the benefit of the doubt.'" *Id.* (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

In addressing the reasonableness prong in Ardell's case the court of appeals stated, "It is well established that a defendant cannot satisfy the deficient performance prong where the claimed deficiency is failure to raise an issue on a point that has not been addressed in the law." *Ardell*, 2018 WI App 28, ¶ 43 (citing *Ronald J.R. v. Alexis L.A.*, 2013 WI App 79, ¶ 11 n.5, 348 Wis. 2d 552, 834 N.W.2d 437 (counsel not ineffective for failing to pursue novel arguments); *State v. Jackson*, 2011 WI App 63, ¶ 10, 333 Wis. 2d 665, 799 N.W.2d 461 ("When the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance.")). Because

> no Wisconsin court has ever interpreted the statute as he does[,] [t]hat ends the deficient-performance analysis. Likewise, no Wisconsin court has ruled on the constitutional challenges he now raises. Regardless of the merits of those arguments, the fact that they were raised for the first time on appeal is fatal because under these circumstances, they do not rise to an ineffective assistance of counsel claim.

*Ardell*, 2018 WI App 28, ¶ 44.

The court of appeals perhaps oversimplified its own precedents and *Strickland* with its articulation of the law. It is accurate to say, "[F]ailure to raise arguments that require the resolution of unsettled legal questions *generally* does not render a lawyer's services outside the wide range of professionally competent assistance sufficient to satisfy the Sixth Amendment." *State v. Lemberger*, 2017 WI 39, ¶18, 374 Wis. 2d 617, 629, 893 N.W.2d 232, 238 (emphasis added; quotation marks omitted) (quoting *New v. United*

*States*, 652 F.3d 949, 952 (8th Cir. 2011)). But novel issues are not inherently beyond the scope of an ineffective assistance of counsel claim. *Bridges v. United States*, 991 F.3d 793, 804 (7th Cir. 2021). "[T]here are some circumstances where [defense counsel] may be obliged to make, or at least to evaluate, an argument that is sufficiently foreshadowed in existing case law." *Id.* (citing *Shaw v. Wilson*, 721 F.3d 908, 917 (7th Cir. 2013); *United States v. Carthorne*, 878 F.3d 458, 465-66 (4th Cir. 2017); *Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015)).

Ardell argues that the court of appeals' imprecision in articulating the proper standard means that this court must review *de novo* his claim of ineffective assistance of counsel. But that is incorrect. *See Fischer v. Van Hollen*, 741 F. Supp. 2d 944, 965 (E.D. Wis. 2011). It is not the state court's reasoning but rather its result to which a federal court owes deference. *Id.* at 965-66 (citing *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009); *Lopez v. Thurmer*, 573 F.3d 484 (7th Cir. 2009); *RaShad v. Walsh*, 300 F.3d 27, 45 (1st Cir. 2002); Fed. Habeas Man. § 3:70). Thus, the court turns to the merits of Ardell's claims—specifically, whether the court of appeals unreasonably concluded that Ardell was not deprived of the effective assistance of counsel.

### 4.1. Due Process

"If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not

be given retroactive effect." *Bouie v. Columbia*, 378 U.S. 347, 354 (1964) (internal quotation marks omitted).

### 4.1.1. "Directed At"

Ardell argues that it was "unexpected and indefensible" that the state courts would interpret the "directed at" provision in Wisconsin's stalking statute as applying to communications that were not intended to be relayed to the victim. Therefore, it violated due process for the courts to apply this new interpretation to his case, and it was unreasonable for his trial counsel to not make this due process argument at trial.

Although Ardell points to some other states that have interpreted their own similar laws differently than the Wisconsin courts did here (ECF No. 15-1 at 19-21), the Wisconsin courts' interpretation was not "unexpected and indefensible" so as to deprive Ardell of due process.

Ardell is wrong when he asserts, "Wis. Stat. §940.32(1)(a) defines 'course of conduct' in terms of specific actions, all of which directly or indirectly involve actual or intended contacts with or communications to the alleged victim." (ECF No. 15-1 at 17.) As the court of appeals noted, Wisconsin's stalking statute states that a "course of conduct" includes certain conduct that does not involve communicating with the victim. *Ardell*, 2018 WI App 28, ¶ 45. For example, a "course of conduct" includes "contacting the victim's employer or coworkers," Wis. Stat. § 940.32(1)(a)3 (2015-16), and "contacting the victim's neighbors," Wis. Stat. § 940.32(1)(a)4 (2015-16).

The state courts' interpretation of "directed act" as not requiring proof that the actor intended the communication be relayed to the victim was consistent with the specific actions that the legislature proscribed in defining "course of conduct" in the statute. When the legislature has expressly proscribed conduct that need not be communicated to the victim, it is hardly "unexpected and indefensible" that a court would interpret another provision of the statute so as to give effect to the legislature's proscriptions.

Consequently, it was not unreasonable for the court of appeals to conclude that Ardell was not deprived of the effective assistance of counsel by trial counsel's failure to timely make this due process argument.

### 4.1.2. Intent

The court of appeals held that "Ardell's argument conflates the requirement that he 'intentionally engaged in a course of conduct' with the requirement that the course of conduct be 'directed at' N. The requirements are distinct." *Ardell*, 2018 WI App 28, ¶ 36. It concluded that the "intent" component applied only to the "course of conduct," and noted, "There is no question that Ardell intentionally sent the emails." *Id.* at ¶ 35.

Ardell argues that this interpretation of the statute was likewise unexpected and indefensible because, under Wisconsin law, when a statute uses "intentionally" it generally applies to every element that follows. (ECF No. 15-1 at 18 (quoting Wis. Stat. § 939.23(3).) Thus, he argues the jury was required to be instructed that he intended to

"cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household." Wis. Stat. § 940.32(2)(a).

However, the court of appeals' interpretation of Wisconsin's stalking statute was far from unexpected: it was reflected in Wisconsin's pattern stalking jury instruction. *See* Wis. JI-Crim. 1284; (ECF No. 21-1 at 2.) It was hardly unreasonable for trial counsel not to argue that the circuit court's interpretation of the statute was "unexpected and indefensible" when the court relied on a published pattern jury instruction.

Substantively, it was reasonable for the state courts to conclude that the state was required to prove only that Ardell intended to engage in the course of conduct. That the course of conduct "would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household" could be reasonably interpreted as merely a description of the consequence of the course of conduct, and not also requiring proof of intent. *Cf. State v. Moreno-Acosta*, 2014 WI App 122, 359 Wis. 2d 233, 857 N.W.2d 908 (discussing the knowledge and intent elements under Wisconsin's identity theft statute).

Consequently, it was not unreasonable for the court of appeals to conclude that Ardell was not deprived of the effective assistance of counsel by his trial counsel's failure to timely make this due process argument.

**4.2. First Amendment**

With respect to his claim that it was unreasonable for trial counsel to not make a First Amendment argument, Ardell's entire argument is: "Likewise, such an attorney would have easily discovered long-established Supreme Court authority under the First Amendment to the effect that such actions are constitutionally protected as long as they are not communicated or intended to be communicated to the alleged victim." (ECF No. 15-1 at 28.)

The cases Ardell cites in support of this assertion—*Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971), and *Rowan v. United States Post Office Department*, 397 U.S. 728, 737, 738 (1970)—fail to demonstrate that the First Amendment claim Ardell now makes was "sufficiently foreshadowed in existing case law," *Bridges*, 991 F.3d at 804, such that it was unreasonable for counsel to not make it. To the contrary, these cases were legally and factually far afield.

In *Rowan* the Court found that a statute allowing people to opt-out of receiving certain junk mail did not violate the First Amendment rights of those seeking to send those unwanted solicitations. *Rowan*, 397 U.S. at 738. In *Keefe*, the Court struck down an injunction that had barred a community organization from distributing information about a real estate agent's alleged racial "blockbusting" practices. *Keefe*, 402 U.S. at 419-20. Neither case holds, as Ardell states, that "actions are constitutionally protected as long as they are not communicated or intended to be communicated to the alleged

victim," (ECF No. 15-1 at 28). Neither case sufficiently foreshadows that Wisconsin's stalking statute—which prohibits a person from (1) intentionally engaging in a course of conduct that would cause a reasonable person to fear bodily injury or death (2) when the actor knew or should have known an act would cause the victim to fear bodily injury or death, and (3) the victim actually did fear bodily injury or death—would be unconstitutional. To the contrary, central to the Court's conclusion in *Keefe* was the fact that the pamphleteers were peaceful. *Keefe*, 402 U.S. at 419.

Rather than presenting his argument through the lens of ineffective assistance of counsel, Ardell devotes much of his discussion of the First Amendment claim to directly arguing its merits. Even considering these arguments insofar as they might be relevant to a claim that trial counsel was unreasonable, Ardell's ineffective assistance claim fails.

In arguing the merits of his First Amendment claim Ardell points to a handful of cases from other states that he argues support the conclusion that Wisconsin's stalking statute, as construed by the court of appeals, is unconstitutional. The most relevant authority Ardell points to is a decision of the Illinois Supreme Court in *People v. Relerford*, 2017 IL 121094, 422 Ill. Dec. 774, 104 N.E.3d 341, where the court found that a similar Illinois stalking statute infringed on protected speech. But *Relerford* was decided more than two years after Ardell's conviction, and thus could not have served to alert Ardell's trial counsel of any potential constitutional infirmity with respect to Wisconsin's statute.

Ardell identifies only two purportedly similar cases that predated his conviction. In *People v. Marquan M.*, 2014 NY Slip Op 4881, ¶ 6, 24 N.Y.3d 1, 9, 994 N.Y.S.2d 554, 560, 19 N.E.3d 480, 486, the court struck down a local law that "in its broadest sense criminalize[d] 'any act of communicating … by mechanical or electronic means … with no legitimate … personal … purpose, with the intent to harass [or] annoy … another person." Similarly, in *State v. Machholz*, 574 N.W.2d 415, 420 (Minn. 1998), the court struck down a statute that "criminalize[d] *any and all* intentional conduct causing a reasonable person to feel oppressed, persecuted, or intimidated, if that conduct interferes with the person's privacy or liberty." *Id.* (emphasis in original).

These cases are distinguishable in that the scope of both of the underlying statutes was far broader in their proscriptions than Wisconsin's stalking statute. Consequently, it would not be unreasonable for even an attorney who had thoroughly reviewed these cases to not see them as suggesting a basis for challenging Wisconsin's stalking statute.

In sum, Ardell falls far short of demonstrating that, under existing case law, a reasonable attorney would have concluded it was necessary to raise a First Amendment challenge to Wisconsin's stalking statute. The Wisconsin Court of Appeals did not unreasonably conclude that Ardell was not deprived of the effective assistance of counsel for not raising such a challenge.

### 4.3. "Would" vs. "Could"

Ardell also argues that the jury was mis-instructed as to the element that "[t]he actor knows or should know that at least one of the acts that constitute the course of conduct *will* cause the specific person to suffer serious emotional distress or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household." Wis. Stat. § 940.32(2)(b) (emphasis added). Although Ardell addresses this issue at various points, he generally does not develop much of an argument. (ECF No. 15-1 at 10, 11, 25.)

The transcript of the court's reading of the jury instructions reflects that the court instructed the jury:

> The defendant's acts induced fear in [N.T.] of bodily injury or death to herself or a member of her family, for the defendant knew or should have known that at least one of the acts constituting the course of conduct *could* place [N.T.] in reasonable fear of bodily injury or death to herself or to a member of her family.

(ECF No. 12-17 at 45 (emphasis added).)

It is unclear if the court misspoke, if the court reporter misheard, or if "could" is a typo. Supporting the conclusion that the error was the court reporter's is the fact that there are other errors in the transcript in close proximity. For example, instead of "Two, the course of conduct …" and, "Four, the defendant knew or should have known …" the court reporter wrote, "To the course of conduct, …" and "…for the defendant knew or should have known …" (*Compare* ECF No. 12-17 at 45 *with* ECF No. 21-1 at 2, 3.)

In any event, the written instructions that the circuit court provided to the jury for its deliberations (ECF No. 12-17 at 91) correctly articulated the fourth element of the stalking offense as, "The defendant knew or should have known that at least one of the acts constituting the course of conduct *would* place [N.T.] in reasonable fear of bodily injury or death to herself or a member of her family." (ECF No. 21-1 at 3 (emphasis added).) Moreover, in reiterating and walking the jury through the instructions in his closing argument, the prosecutor correctly recounted this element. (ECF No. 12-17 at 58.) So, too, did Ardell's attorney in closing. (ECF No. 12-17 at 77.) Thus, presuming the court actually did misspeak, it was neither unreasonable nor prejudicial for trial counsel to not timely challenge the court's error.

## 5. Conclusion

Because the court of appeals concluded that Ardell's trial counsel failed to properly raise the claims Ardell presents to this court, the court must consider these claims through the doubly deferential standard of ineffective assistance of counsel. The court of appeals reasonably concluded that Ardell's trial counsel was not ineffective for failing to timely raise the arguments Ardell now makes.

The state courts' interpretation of the stalking statute was not unexpected and indefensible. The courts' construction of "directed at" was consistent with other aspects of the statute. And their application of the intent element was reflected in Wisconsin's published pattern jury instructions. Nor was it unreasonable for counsel to not have

raised a First Amendment challenge because, at a minimum, the claim was not sufficiently foreshadowed in existing case law. And, finally, to the extent the court misspoke and said "could" instead of "would" when reading the jury instructions, trial counsel was not ineffective for failing to raise an objection because any error was harmless. The jury was accurately informed of the law in the written instructions it received and in both sides' closing arguments. Accordingly, the court must deny Ardell's petition for a writ of habeas corpus.

Having denied Ardell's petition, the court must determine whether to grant Ardell a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); Rule 11 of the Rules Governing Section 2254 Cases. "An unsuccessful habeas petitioner has no right to appeal the denial of his petition." *Limehouse v. Thurmer*, No. 09-C-0071, 2012 U.S. Dist. LEXIS 43420, at *27 (E.D. Wis. Mar. 29, 2012) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 327, 335 (2003)). The court may issue a certificate of appealability, thus permitting the petitioner's appeal, only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Ardell has not satisfied this standard, and accordingly the court denies a certificate of appealability.

**IT IS THEREFORE ORDERED** that Ardell's petition for a writ of habeas corpus is denied and this action is dismissed with prejudice. The court denies Ardell a certificate of appealability. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 14th day of May, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge