UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KORRY L. ARDELL,

        Petitioner,

v.                                                           Case No. 19-CV-1097

LANCE WIERSMA, Administrator.

        Respondent.

## MOTION FOR RELIEF FROM JUDGMENT

Korry L. Ardell, petitioner in this action, by counsel, respectfully moves this Court pursuant to Fed. R. Civ. P. 60(b) for relief from the Decision and Order entered May 14, 2021, and the Judgment entered May 17, 2021, dismissing Ardell's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 and denying him a certificate of appealability (R26; R27).

Motions for reconsideration are appropriate, as here, "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted).

With all due respect to the Court, it committed at least three manifest errors contrary to controlling authority in denying Ardell's habeas petition. First, because it did not apply regularly followed and firmly established state practice in concluding that Ardell forfeited his substantive right-to-a-jury-verdict claims, the state court's denial of those claims did not, as a matter of federal law, rely on an independent and adequate state law ground. Second, because the state court's denial of Ardell's substantive claims rested on inadequate procedural grounds rather than on their merits, review of those claims is *de novo* without deference under AEDPA. And third, in assessing Ardell's ineffectiveness claims that the state court *did* decide on their merits in a reasoned decision, AEDPA deference turns on

whether the reasons actually given by the state court were reasonable, rather than the perceived reasonableness of hypothetical rationales the state court *might* have applied had it considered them.

In each of these regards, the Court overlooked or misconstrued controlling authority contrary to its decision. *E.g.*, *Oto*, 224 F.3d at 606 (Court's "'misapplication, or failure to recognize controlling precedent'" is "manifest error" supporting reconsideration (citation omitted)). Accordingly, reconsideration and vacation of the Court's May 14, 2021 decision are necessary so the Court may review Ardell's claims *de novo* as required by controlling authority.

Moreover, because the Court's decision overlooks or misapplies controlling authority that at least arguably mandates granting him the relief he seeks, the controlling standards for granting a certificate of appealability also mandate reconsideration and reversal of this Court's Order denying Ardell such a certificate.

As such, relief from the Order and Judgment is appropriate under Rule 60(b)(1) and (6).

## I. BECAUSE THE COURT'S DENIAL OF HABEAS RELIEF OVERLOOKED RELEVANT CONSIDERATIONS AND CONTROLLING LAW, RECONSIDERATION IS APPROPRIATE

### A. This Court's Procedural Default Holding Overlooks and Conflicts With Controlling Authority

The state court's conclusory assertion that Ardell forfeited his substantive claims (12-5:18) was not pursuant to a regularly followed and firmly established state procedure and thus, as a matter of federal law, was not an independent and adequate state law ground barring federal habeas review. This Court's holding to the contrary (R26:10-11) both overlooks the applicable state procedural rules at issue and, by deferring to the state court on an issue of *federal* law, conflicts with controlling authority.

As Ardell summarized the controlling law in his Amended Memorandum (R15-1:25-26):

> . . . Although the failure to object generally is deemed a forfeiture of the right to challenge defective jury instructions, Wis. Stat. §805.13; *see State*

*v. Schumacher*, 144 Wis.2d 388, 398-99, 424 N.W.2d 672, 676 (1988), the failure to instruct on a necessary element of the offense in effect constitutes a directed verdict on that element. Accordingly, any waiver or forfeiture of the right to a jury verdict on all facts necessary for conviction must be made during the court's personal colloquy with the defendant demonstrating his knowledge of that right and that his actions would waive it. *E.g.*, *State v. Smith*, 2012 WI 91, ¶¶52-57, 342 Wis.2d 710, 817 N.W.2d 410; *State v. Hauk*, 2002 WI App 226; ¶34, 257 Wis.2d 579, 652 N.W.2d 393, citing *State v. Livingston*, 159 Wis.2d 561, 569, 464 N.W.2d 839 (1991).

Because Ardell neither personally waived his right to a verdict beyond a reasonable doubt of all facts necessary for conviction nor demonstrated any knowledge that the instructions would deny him that right, counsel's failure to object to the errors did not forfeit his right to challenge them. *E.g., Smith, supra*. Because the state court's "forfeiture" holding conflicts with decisions such as *Smith*, it does not represent the type of "firmly established and regularly followed state practice" (being neither) that may be interposed by a state to prevent subsequent federal review of a federal constitutional claim. *E.g.*, *James v. Kentucky*, 466 U.S. 341, 348-51 (1984).

Ardell explained these controlling principles more fully in his Reply Memo (R24:2-4).

Although overlooked by this Court, the question of whether a state court procedural default decision is "firmly established and regularly followed" as required to constitute an "independent and adequate state law ground" is a matter of *Federal* law, not state law. (*See* R24:2-3, citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (Whether a state procedural ruling is "adequate" is a question of federal law); *Barr v. Columbia*, 378 U.S. 146, 149 (1964) (state procedural rules "not strictly or regularly followed" do not bar review); and *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015)). *See, e.g., Cone v. Bell*, 556 U.S. 449, 465 (2009) ("'[t]he adequacy of state procedural bars to the assertion of federal questions' ... is not within the State's prerogative finally to decide; rather, adequacy 'is itself a federal question.'" (citations omitted)).

Ardell's substantive claims all focus on the denial of his federal constitutional right to a jury verdict on *all* facts statutorily or constitutionally necessary for conviction (*See* R15-1:8-26; R24:2-13). While *other* types of errors[1] and *other* types of instruc

---

[1] *See, e.g., Promotor v. Pollard*, 628 F.3d 878, 886-87 (7th Cir. 2010)(failure to object to inaccurate information in presentence report); *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis.2d 486, 611
(continued...)

tional claims may be forfeited under Wisconsin law simply by the failure to object at trial,[2] the Wisconsin Supreme Court has made clear that any waiver or forfeiture of the right to a jury verdict on all facts necessary for conviction must be made during the court's personal colloquy with the defendant demonstrating his knowledge of that right and that his actions would waive it. *E.g.*, *Smith*, 2012 WI 91, ¶¶52-57; *Livingston*, 159 Wis.2d at 569; *see Hauk*, 2002 WI App 226, ¶¶31-37. No such colloquy was conducted regarding the substantive claims resulting here in the denial of Ardell's right to a jury verdict on *all* facts necessary for conviction.

Application of a procedural default rule in a manner that, as here, conflicts with controlling Wisconsin authority by definition cannot have been a "firmly established and regularly followed state practice" and thus cannot rationally be deemed "adequate" to bar federal habeas relief. *See James*, 466 U.S. at 348-51. *See also Ford v. Georgia*, 498 U.S. 411, 423 (1991) ("Novelty in procedural requirements cannot be permitted to thwart review in this Court applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights," quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457–458 (1958)).

This Court, however, chose not to analyze the adequacy of the state court's application here, mistakenly believing, contrary to controlling authority such as *Lee* and *Cone*, that the question was a matter of state rather than federal law (R26:11-12).[3]

---

[1](...continued)
N.W.2d 727 (failure to object to 6-person jury forfeited the objection); *State v. Erickson*, 227 wis.2d 758, 596 N.W.2d 749, 754 (1999) (failure to object to number of peremptory challenges forfeited objection).

[2] Wis. Stat. §805.13; *see State v. Schumacher*, 144 Wis.2d 388, 398-99, 424 N.W.2d 672, 676 (1988) (failure to object to arguably duplicitous jury instruction splitting single offense into two).

[3] *Oaks v. Pfister*, 863 F.3d 723 (7th Cir. 2017), does not support this Court's mistaken belief. While noting that federal courts generally "do 'not have license to question ... whether the state court properly applied its own law,'" that Court further recognized that it nonetheless "could assess whether the state rule is a 'firmly established and regularly followed state practice.'" However, unlike here, "Oaks [did] not challenge the rule on those grounds." *Id.* at 727 (citations omitted).

-4-
Case 2:19-cv-01097-WED    Filed 06/11/21    Page 4 of 18    Document 28

Because this Court's procedural default ruling failed to recognize and apply controlling authority contrary to its analysis, reconsideration is appropriate here. *Oto*, *supra*. Ardell is entitled to federal habeas review of his substantive claims that he was denied the right to a jury verdict on all facts statutorily and constitutionally necessary for conviction.

    **B.    This Court's Failure to Review Ardell's Substantive Claims *De Novo* Overlooks and Conflicts with Controlling Authority**

Having overlooked controlling authority and mistakenly concluding that Ardell procedurally defaulted his substantive claims that he was denied the right to a jury verdict on all facts legally and constitutionally required for conviction, *see* Section I, A, *supra*, the Court limited its consideration of those claims to the context of Ardell's ineffectiveness claims (R26:11-23). While the Court's ineffectiveness analysis itself conflicts with controlling authority, *see* Section I,C, *infra*, the fact remains that the Court once again overlooked controlling authority by failing to review his substantive claims *de novo* and by instead only addressing whether the state court reasonably could have denied Ardell's ineffectiveness claims.

As explained in Ardell's Amended Memorandum, but apparently overlooked in the Court's recitation of AEDPA standards (*see* R26:6-8), controlling authority requires that the restrictive provisions of the AEDPA apply *only* to matters actually decided on the merits by the relevant state court; matters not decided on the merits are reviewed *de novo*. *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (*de novo* review where state courts did not reach prejudice prong under *Strickland v. Washington*, 466 U.S. 668 (1984)); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)(same); *Thomas v. Clements*, 789 F.3d 760, 766-67 (7th Cir.), *rehearing denied*, 797 F.3d 445 (2015), *cert. denied*, 136 S.Ct. 1454 (2016); *see, e.g.*, 28 U.S.C. §2254(d). "If the state court did not reach the merits, §2254 does not apply and this court applies the general habeas standard set forth at 28 U.S.C. §2243." *Muth v. Frank*, 412 F.3d 808, 814 (7th Cir. 2005) (citation omitted).

Given its novel conclusion that Ardell somehow forfeited his right to a jury verdict on all facts necessary for conviction, the state court did not address or decide the merits of Ardell's substantive claims raised here. (*See* R12-5:18-20). Accordingly, the restrictive

requirements of 28 U.S.C. §2254(d) do not apply and review is *de novo*. *E.g.*, *Liegakos v. Cooke*, 106 F.3d 1381, 1384-85 (7th Cir.), *rehearing denied*, 108 F.3d 144 (7th Cir. 1997).

Because this Court overlooked and failed to apply controlling authority requiring it to review *de novo* Ardell's substantive claims that he was denied the right to a jury verdict on all facts legally and constitutionally required for conviction, reconsideration is appropriate.

### C. This Court's Ineffective Assistance Analysis Overlooks and Conflicts with Controlling Authority

This Court appears to concede, as indeed it must, that the state court's application of a *per se* rule exempting certain unreasonable attorney errors from review for ineffectiveness conflicts with the case-specific reasonableness standard for deficient performance required by *Strickland v. Washington*, 466 U.S. 668, 688 (1984). (R26:13-14).[4] It nonetheless

---

[4] The state court based its denial of Ardell's ineffectiveness claims on Wisconsin's *per se* rule "that it is not deficient performance when counsel fails to make an argument based on a legal interpretation no court has adopted." (R12-5:3 (footnote omitted); *see id.*:18-19).

Contrary to this Court's suggestion (R26:13-14), the state court neither "oversimplified its own precedents" nor merely committed "imprecision in articulating the proper standard." Rather, as the State acknowledges (R23:24-25), the *per se* standard that the state court substituted for *Strickland's* case-specific reasonableness standard *is* the settled rule in Wisconsin. *See, e.g.*, *State v. Breitzman*, 2017 WI 100, ¶49, 378 Wis.2d 431, 904 N.W.2d 93 ("At the outset, we note that, for trial counsel's performance to have been deficient, Breitzman would need to demonstrate that counsel failed to raise an issue of settled law. . . . Thus, we turn to the question of whether the law is clear that profane conduct that tends to cause or provoke a disturbance is protected as free speech." (Citations omitted)); *State v. Lemberger*, 2017 WI 39, ¶ 33, 374 Wis. 2d 617, 893 N.W.2d 232 ("We think ineffective assistance of counsel cases should be limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue," quoting *State v. McMahon*, 186 Wis.2d 68, 85, 519 N.W.2d 621 (Ct. App. 1994)); *State v. Morales-Pedrosa*, 2016 WI App 38, ¶16, 369 Wis.2d 75, 879 N.W.2d 772 ("counsel does not perform deficiently in failing to 'object and argue a point of law' that is 'unclear.'" (citation omitted)); *Ronald J.R. v. Alexis L.A.*, 2013 WI App 79, ¶11 n.5, 348 Wis.2d 552, 834 N.W.2d 437 (counsel not ineffective for failing to pursue novel arguments); *State v. Jackson*, 2011 WI App 63, ¶10, 333 Wis.2d 665, 799 N.W.2d 461 ("When the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance"); *State v. Wery*, 2007 WI App 169, ¶17, 304 Wis.2d 355, 737 N.W.2d 66 ("Deficient performance is limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue." (Citation omitted)); *State v. Maloney*, 2005 WI 74, ¶23, 281 Wis.2d 595, 698 N.W.2d 583; *State v. Thayer,* 2001 WI App 51, ¶14, 241 Wis.2d 417, 626 N.W.2d 811 (holding flatly that "counsel is not required to argue a point of law that is unclear"); *State v. Oswald*, 2000 WI App 2, ¶49, 232 Wis.2d 62, 606 N.W.2d 207 ("Deficient performance is limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the
(continued...)

proceeds to analyze whether the state court might reasonably have rejected Ardell's ineffectiveness claims under some other, unstated rationale. (R26:14-23).

Once again, however, the Court overlooks controlling authority. First, when the state court explains its decision on the underlying merits of a claim such as the ineffectiveness claims raised here, controlling authority requires that deference is limited to assessing whether the *stated reasons* are contrary to or reflect an unreasonable application of controlling Supreme Court authority under 28 U.S.C. §2254(d). The Federal Court must "train its attention on the particular reasons—both legal and factual—why state courts rejected [the petitioner's] federal claims." *Wilson v. Sellers*, --- U.S. ----, 138 S. Ct. 1188, 1191-92 (2018). "[W]hen the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion, . . . a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* at 1192. *See, e.g., Winfield v. Dorethy*, 956 F.3d 442, 454 (7th Cir. 2020); *Gish v. Hepp*, 955 F.3d 597, 603 (7th Cir.), *cert. denied*, 141 S.Ct. 681 (2020). Accordingly, deference under AEDPA is expended and the claims are reviewed *de novo* where, as here, the state court's decision is contrary to or reflects an unreasonable application of controlling Supreme Court authority under 28 U.S.C. §2254(d). *Panetti v. Quarterman*, 551 U.S. 930, 953-54 (2007).

This Court's holding that it is the state court's result rather than its reasoning which is owed deference under AEDPA (R26:14) accordingly conflicts with controlling authority, as does its subsequent analysis improperly granting deference to hypothetical "reasonable" justifications for the state court's result rather than conducting the *de novo* review of Ardell's claims required by controlling authority.

The Court's decision reflects yet another oversight of controlling authority, however. Specifically, while courts must defer to counsel's reasonable strategic decisions, controlling authority dictates that no deference applies where, as here, counsel's errors result from

---

⁴(...continued)
issue."); *McMahon*, 186 Wis.2d at 84 ("If, as this court recognizes, *Lomagro* can be reasonably analyzed in two different ways, then the law has not been settled. Counsel is not required to object and argue a point of law that is unsettled.").

oversight rather than intentional strategic decisions.[5] *See, e.g.*, *Andrus v. Texas*, 140 S. Ct. 1875, 1883 (2020); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). Accordingly, controlling authority dictates that no deference is owed to trial counsel's failures to preserve the claims here. *E.g.*, *Earls v. McCaughtry*, 379 F.3d 489, 494 (7th Cir. 2004) (no deference owed attorney actions based on oversight).

### D. The Required Analysis Makes a Difference

Having overlooked controlling authority dictating that Ardell did *not* procedurally default his substantive "right to a jury verdict" claims and that all of his claims must be reviewed *de novo* and without deference to either trial counsel or the state court, this Court has not yet analyzed Ardell's claims under the required standards. However, the difference in approach between deferring to state court results and attorney decisions that may be deemed "reasonable" even if erroneous and instead reviewing the matter *de novo* to reach the correct result as required by controlling authority makes a significant difference here. (*See* R15-1:11-31; R24:2-15).

It is one thing, for instance, to defer to a state court's mistake as "reasonable" even though it

- ignored the uniform consensus interpretation by every other existing court decision to construe of the same language (R15-1:19-21; R24:5-6; R25),
- ignored a state statute specifically defining that "intentionally" is to be construed exactly as Ardell argues (R15-1:17-18; R24:__),
- ignored the fact that communications with third parties that are not passed on to the alleged victim or used to harm the victim can have no rational impact on that victim,
- ignored the fact that the statute at issue specifically exempts exactly the type of inquiries and provision of information for which Ardell was convicted unless accompanied by an intent that they be communicated to the alleged

---

[5] Trial counsel had no strategic or tactical reasons for any perceived failure to preserve the substantive issues raised here. As shown in Ardell's post-conviction motion, he simply did not think of most of them and, while he thought of the First Amendment and Wis. Stat. §940.32(4) issues, he erroneously overlooked the fact that they were viable claims. (R14-7:17, 21-22).

victim or used to harass them, *see* Wis. Stat. §940.32(4)(a)1 (R15-1:21-22; R24:6-7), and

- ignored the impact of its novel interpretation on both the First Amendment rights of individuals and the fact that its interpretation would criminalize virtually any investigation by private investigators, attorneys, or even police since all that is necessary for conviction is that the defendant communicated with a third party about a particular person under circumstances that would cause that person emotional distress if they learned of it (R15-1:22-24, 26; R24:6-7, 9-13).

It is quite another matter to account for such compelling facts when assessing "*de novo*" whether the state court's novel interpretation was so unforeseeable and indefensible by reference to prior authority that retroactive application of that interpretation violates due process. For instance, *de novo* review would have to account for the fact that the state court interpreted the statute to criminalize Ardell's emails without regard to whether he intended them to be either communicated to the alleged victim or used to harass her because:

> [t]he communications here were very clearly for the purpose of "obtaining information about" N.'s representations about the injunction and "disseminating information about" her purportedly false statements. The statute's plain language criminalizes sending material for those purposes—obtaining information about and disseminating information about—as well as "communicating with the victim." The emails to the principal had both of those purposes.

(R12-5:19-20). And yet, Wis. Stat. §940.32(4)(a)1 expressly provides that the Stalking statute "does not apply" to such "[g]iving publicity to and obtaining or communicating information regarding any subject. . .." Not surprisingly, the state court does not even cite §940.32(4), let alone attempt distinguish it. (*See* R12-5). *See United States v. Cardiff*, 344 U.S. 174, 176–77 (1952) ("We cannot sanction taking a man by the heels for refusing to grant the permission which this Act on its face apparently gave him the right to withhold. That would be making an act criminal without fair and effective notice.").

Similarly, while it may be one thing to find that the state court made a reasonable

mistake by relying on the state's pattern jury instructions had it actually done so (R26:17, 22), the fact remains that such instructions are merely persuasive and not binding. *State v. Harvey*, 2006 WI App 26, 289 Wis. 2d 222, 710 N.W.2d 482 (rejecting pattern instructions' definition of cunnilingus); *see State v. Carter*, 2007 WI App 255, ¶23 & n.13, 306 Wis.2d 450, 743 N.W.2d 700 (rejecting special materials analysis of sentence credit), *aff'd as modified*, 2010 WI 77, 327 Wis. 2d 1, 785 N.W.2d 516. As importantly, the state court's interpretation conflicted with the language and logic of the statute (which controls over the instructions), with common sense, and with the uniform interpretation of the statutory language by every court to have addressed it, all of which were available to members the general public while Wisconsin's pattern jury instructions were not and thus could not rationally provide the notice or "foreseeability" that the state court would misconstrue the statute as it did here.[6]

Regarding the trial court's reduction of the state's burden from proving that Ardell know or should know his actions "will" cause emotional distress to merely that they "could" do so (R26:21-22), the Court appears to have overlooked the fact that controlling law provides that "arguments of counsel cannot substitute for instructions by the court." *Taylor v. Kentucky*, 436 U.S. 478, 488–89 (1978); *Carter v. Kentucky*, 450 U.S. 288, 304 (1981); *see Boyde v. California*, 494 U.S. 370, 384 (1990) (explaining that "arguments of counsel generally carry less weight with a jury than do instructions from the court"). Moreover, it is pure speculation that the jury either reviewed the written instructions or, if it did, recognized that the written instructions trumped the judge's erroneous oral instructions. Instead, the trial court's oral instructions reminded the jury of its duty to follow its instructions, that the jury "must base [its] verdicts on the law as I give you in these instructions," and that the attorney arguments are not evidence. (R12-17:36-37, 89).

Accordingly, there is a major difference, as here, between accepting another court's "reasonable" mistake and the Court's obligation under *de novo* review to independently

---

[6] Until earlier this year, Wisconsin's Pattern Jury Instructions were not generally available to the public. *See* Wisconsin Jury Instructions Now Available Free Online through State Law Library, *Inside Track*, Vol. 13, No. 3 (February, 2021), https://www.wisbar.org/NewsPublications/InsideTrack/Pages/Article.aspx?Volume=13&Issue=3&ArticleID=28193

reach the right result on Ardell's claims. Reconsideration accordingly is necessary.

### E. The Court's Discussion of Ardell's First Amendment Argument Overlooks and Conflicts with Controlling Authority

This Court's First Amendment analysis also reflects the major difference between the deferential review it applied and the *de novo* review that controlling authority mandates. The Court focuses on whether an attorney who had identified and reasonably researched the applicable law necessarily would have acted unreasonably by choosing not to raise a First Amendment challenge. (R26:18-20). The Court does not address *de novo* whether the state court's interpretation of the Wisconsin Stalking statute and application of that interpretation is consistent with the First Amendment.

Ardell stands convicted for providing information to, and requesting information from, a third party *about* a specific subject. The state court interpreted the Stalking statute not to require that Ardell intended those communications to be passed on to the alleged victim. Although overlooked or ignored by the state court, Wis. Stat. §940.32(4)(a)1 provides that

> This section does not apply to conduct that is or acts that are protected by the person's right to freedom of speech or to peaceably assemble with others under the state and U.S. constitutions, including, but not limited to, any of the following:
>
> 1. Giving publicity to and obtaining or communicating information regarding any subject,

This Court directly addressed only whether the state court hypothetically *might* have acted reasonably if it had not ruled on other grounds and instead held that trial counsel might have acted reasonably in choosing not to challenge the state court's interpretation on First Amendment grounds (had he in fact made a decision and had not mistakenly viewed the claim as meritless) (R26:18-20). Accordingly, reconsideration is necessary for this Court to apply the *de novo* review mandated by controlling authority.

Yet, even in the deferential context applied by this Court, its analysis overlooks the fact that controlling authority has long held that interpreting a statute to ban the mere seeking or distributing information about a particular topic or person, as the state court did

here, is a content-based restriction on speech that presumptively violates the First Amendment. *See, e.g.*, *R.A.V. v. St. Paul*, 505 U.S. 377, 387 (1992) (The states generally may not proscribe speech based on its content).[7] "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972) (citation omitted). As a result, "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (citations omitted). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* (citations omitted).

While the state constitutionally may protect the individual's right not to receive such communications, and thus may restrict or ban communications intended to be transmitted directly or indirectly to an unwilling audience, *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 737, 738 (1970) (no First Amendment right to press even good ideas on individual who asks to be left alone), long established law prohibits restricting communications simply because the subject of those communications objected to them. *E.g.*, *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971) (First Amendment bars enjoining defendants from distributing leaflets that criticized Keefe's business practices in Keefe's neighborhood).

Although overlooked by the Court, it is the longstanding constitutional principles banning content-based restrictions that the state court's interpretation violates. *Rowan* and *Keefe* merely establish the framework for a possible exception to those constitutional principles, distinguishing between state regulation of communications to an unwilling listener, which the constitution allows under *Rowan*, and regulation of communications with third parties *about* a particular person, which the constitution bans as in *Keefe*.

These basic constitutional principles are controlling. They are not remotely new.

---

[7] The Court's analysis (R26:19) also overlooks the fact that, properly and rationally construed, it is not the Wisconsin Stalking statute that violates the First Amendment. It is only the state court's irrational and unpredictable interpretation of the statute contrary to §940.32(4)(a)1 to criminalize communications with third parties based on their content that violates the First Amendment.


-12-
Case 2:19-cv-01097-WED   Filed 06/11/21   Page 12 of 18   Document 28

And they apply directly to the state court's content-based interpretation of Wisconsin Stalking statute to ban communications "about" a particular person absent a finding that those communications were intended to be passed on to that person. *See People v. Relerford*, 104 N.E.3d 341 (Ill. 2017) (Stalking statute facially unconstitutional to extent it criminalizes communications "about" alleged victim); *State v. Shackelford*, 825 S.E.2d 689 (N.C. App. 2019) (Stalking statute unconstitutional as applied to internet posts and emails to third parties "about" the alleged victim); *Bey v. Rasawehr*, 161 N.E.3d 529 (Ohio 2020) (vacating stalking injunction barring internet postings "about" the alleged victim as unconstitutional content-based prior restraint).[8]

## II. Because the Court's Denial of a Certificate of Appealability Overlooked Relevant Considerations and Controlling Law, Reconsideration is Appropriate

The Court has not yet analyzed Ardell's substantive and ineffectiveness claims *de novo* and under the standards required by controlling authority. While Ardell must assume that the Court will do so appropriately and therefore grant him habeas relief, he must "hope for the best but prepare for the worst."

Even if the Court should somehow disagree that Ardell is entitled to relief from the decision and judgment denying his habeas petition for the reasons stated *supra*, the facts and controlling legal principles discussed above that were overlooked by the Court demonstrate at minimum that reasonable jurists could find both the Court's substantive conclusions and its procedural findings of default and application of AEDPA to be debatable. This Court ultimately may disagree with Ardell's showing that he is entitled to habeas relief. However, Ardell's claims are far from frivolous and at the very least worthy of debate by jurists of reason.

### A. Applicable Legal Standards

#### 1. General standard for granting Certificate of Appealability

A certificate of appealability must issue for claims addressed by a district court upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The

---

[8] Although Ardell's trial preceded release of *Relerford*, *Shackleford*, and *Bey*, the controlling authorities and legal principles underlying those decisions long predated them.

[certificate of appealability] process screens out issues unworthy of judicial time and attention and ensures that frivolous claims are not assigned to merits panels." *Gonzalez v. Thaler*, 565 U.S. 134, 145 (2012).

In addressing this point, the Court must take into account the teachings of the United States Supreme Court in *Barefoot v. Estelle*, 463 U.S. 880 (1983). The Court there recognized that, to be allowed to appeal in a habeas case, "obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor." *Id.* at 893 n.4 (internal quotations and citations omitted). Instead, the Court set forth four standards, all alternative and less stringent, to separate appeals that deserve to be heard from those frivolous claims too weightless to continue further. Under *Barefoot*, a certificate should issue if the appeal presents at least one "question of some substance" (1) that is "debatable among jurists of reason," or (2) "that a court could resolve in a different manner," or (3) that is "adequate to deserve encouragement to proceed further," *id.* at 893 n.4 (internal quotations, brackets, and citations omitted), or (4) that is not "squarely foreclosed by statute, rule, or authoritative court decision, or . . . lacking any factual basis in the record," *id.* at 894

The Court also should be mindful of the Supreme Court's teaching that a petitioner need not "prove, before the issuance of a [certificate of appealability] that some jurists would grant the petition for habeas corpus." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). "[A] claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that [the] petitioner will not prevail." *Id.*

Finally, although §2253(c)(2)'s requirement of a certificate of appealability expressly requires only "a substantial showing of the denial of a constitutional right," the Supreme Court extended the required showing where, as here, the district court dismisses or denies one or more claims in the petition on procedural grounds. Specifically,

> When, as here, the district court denies relief on procedural grounds, the petitioner seeking a COA must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

> constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

*Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012), quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### B. Ardell's Claims Satisfy the Requirement of a Certificate of Appealability

Here, we know both that this Court applied the wrong legal standard in deferring to the state court on the adequacy of the state court's procedural default holding and that the state court's holding conflicts with other decisions that appear to be controlling. Section I,__, *supra*. Accordingly, jurists of reason not only could but have disagreed with this Court's decision on that point. Accordingly, should the Court persist in finding that Ardell procedurally defaulted his substantive claims, a Certificate of Appealability is justified on that pendant procedural issue.

Likewise on the merits of Ardell's substantive "right to a jury verdict" claims, jurists of reason would find any denial to be at worst subject to debate if not wrong. For instance, a reasonable jurist easily could find any denial of Ardell's due process notice claim at worst debatable given the applicable *de novo* standard of review, the long-established substantive legal standards, and the fact the state court decision conflicts with the uniform consensus interpretation of the same language by every other existing decision by courts presumably composed of reasonable jurists, as well as with statutory requirements for interpreting the term "intentionally" and the statutory mandate that the provision not criminalize the actions the state court chose to criminalize. *See* Wis. Stat. §940.32(4)(a)1 (Stalking statute does not apply to "[g]iving publicity to and obtaining or communicating information regarding any subject. . .."). Add the fact that the state court decision ignores the impact of its novel interpretation on the First Amendment rights of individuals and could effectively criminalizes virtually any investigation by private investigators, attorneys, or even police, and reasonable jurists do doubt would find at worst debatable whether the judicial enlargement of the state Stalking statute was "unexpected and indefensible" by reference to the prior law. One generally does not expect that a state court will interpret a statute in a way that conflicts with statutory language, the First Amendment, and

common sense.

A reasonable jurist also could find that this Court's analysis – focusing on the fact that the list of actions that may constitute a "course of conduct" under Wis. Stat. §940.32(1)(a), some of which involve communications or contact with third parties (R26:15-17) – overlooks the fact that such actions are illegal *only* when combined with the required *mens rea* as defined in Wis. Stat. §940.32(2). Interpreting the *mens rea* requirement to be coextensive with the scope of the possible acts constituting the "course of conduct" effectively renders the *mens rea* requirement moot, especially when such an interpretation, as here, conflicts both with statutory requirements for interpreting statutory language and the statutory exemption from liability for exactly the type of acts the state court deemed sufficient to justify conviction. *E.g., Cardiff, supra*. Given established due process notice standards and the express statutory and constitutional exemptions for communicating and obtaining information, a reasonable jurist would at least find debatable the suggestion that an interpretation conflicting with those standards is "forseeable" or "defensible," despite a rogue but non-binding pattern jury instruction that was generally unavailable to the public.

Likewise with Ardell's First Amendment challenge to the state court's enlargement of the Stalking statute, at least three presumably reasonable courts already have recognized that criminalizing inquiries *about* a particular person is an unjustified content-based restriction that therefore violates the First Amendment under long-settled precedent. *Relerford, supra; Shackelford, supra; Bey, supra*.

Even if the Court chooses not to reconsider its denial of habeas relief, therefore, Ardell remains entitled to a certificate of appealability on both his substantive claims (and the related procedural issue if the Court persists in its belief that he procedurally defaulted those claims) and his ineffectiveness claims as follows:

   1.   Did the jury instructions, which permitted conviction for stalking based merely on the defendant's communications with third parties about the alleged victim, and without requiring a finding that he intended that the substance of the conversations

> be communicated to the alleged victim or encourage harassment of her, deny Ardell his constitutional right to a jury finding beyond a reasonable doubt of all facts necessary for conviction on the grounds that the instructions:
>
> a. violated due process by retroactively expanding the scope of the offense charged in a manner that was neither foreseeable nor defensible by reference to previous authority;
>
> b. violated Ardell's First Amendment rights by impermissibly criminalizing speech seeking and sharing information based on the content of that speech;
>
> c. permitted conviction contrary to the express statutory recognition that the statute at issue "does not apply" to "[g]iving publicity to and obtaining or communicating information regarding any subject. . .." Wis. Stat. §940.32(4)?
>
> 2. Did the jury instructions fail to require proof beyond a reasonable doubt of all facts necessary for conviction on the grounds that the instructions failed to require that Ardell knew or should have known that at least one of the acts "will" or would (rather than merely "could") place the alleged victim in reasonable fear of bodily injury?
>
> 3. If Ardell is deemed to have procedurally defaulted any of his preceding claims, was he denied the effective assistance of counsel due to his trial counsel's failure to identify and properly object to the violations?

And, if the Court persists in its conclusion that Ardell procedurally defaulted his substantive claims, a certificate of appealability is appropriate on the following additional issue as well:

> 4. Whether the state court's procedural denial of Ardell's substantive claims constitutes an independent and adequate state law ground barring federal habeas review.

## CONCLUSION

For these reasons, therefore, Mr. Ardell respectfully asks that the Court vacate the Decision and Order entered May 14, 2021, and the Judgment entered May 17, 2021, dismissing Ardell's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. Should the Court deny that request, Ardell asks that it vacate that part of the Decision and Order denying him a certificate of appealability and instead grant him such a certificate on the issues identified here.

Dated at Milwaukee, Wisconsin, June 11, 2021.

Respectfully submitted,

| | |
|---|---|
| P.O. ADDRESS: | KORRY ARDELL, Petitioner |
| 316 N. Milwaukee St., #535 | HENAK LAW OFFICE, S.C. |
| Milwaukee, Wisconsin 53202 | |
| (414) 283-9300 | s/ Robert R. Henak |
| (414) 283-9400 (fax) | Robert R. Henak |
| henaklaw@sbcglobal.net | State Bar No. 1016803 |

## CERTIFICATION

Pursuant to Civil L.R. 7.1, I hereby certify that no brief or other supporting documents will be filed with this motion

/s Robert R. Henak
Robert R. Henak
State Bar No. 1016803

Mo. Reconsider1.wpd